### TURNIPSEED v. SIRRINE.

1. STATUTE OF FRAUDS.—The fourth clause of sec. 4 of the statute of frauds has no application to contracts relating to personal property.
2. IBID.—WILLS—SPECIFIC PERFORMANCE—EVIDENCE—PAROL.—The execution of an oral agreement to make mutual wills on the part of the plaintiff, whereby she bequeathed to the deceased a legacy of ten thousand dollars, and the residue of her estate, is such performance of the agreement on her part as will take the case out of clause 4, of sec. 17, of statute of frauds, permit agreement to be proved by parol, and enable the Court to decree specific performance on part of deceased's legatees.

    *Izard* v. *Middleton,* 1 DeS., 116, *overruled.*
3. REHEARING refused.

Before KLUGH, J., Greenville, February, 1899. Reversed.

Action by Susan E. Turnipseed against George W. Sirrine, executor of A. Viola Neblett, Sarah Enodeus Neblett,

and The Neblett Free Library Association. The Circuit decree is as follows:

"This case was heard by me upon the pleadings, testimony taken in open Court and argument of counsel, in December, 1898. The object of the action is to established an agreement which the plaintiff claims was entered into by Mrs. A. Viola Neblett with the plaintiff, by which Mrs. Neblett promised to leave by will to the plaintiff the bulk of her property, and to enforce the performance of the agreement. The complaint alleges that the plaintiff and A. Viola Neblett were aunt and niece, and had no other near relatives by blood—the latter, however, being married to J. M. Neblett, and that they resided together as one family in the city of Greenville until the year 1892, when said J. M. Neblett died, and that thereafter plaintiff and Mrs. Neblett continued so to reside together until the year 1895. That many years ago, and prior to the aforesaid dates, they entered into an agreement by which each agreed to leave to the other the great bulk of her property, with the proviso that Mrs. Neblett's husband, should he survive her, was to have her property for his life. That in the year 1892, after J. M. Neblett died, being sole next of kin to one another, and sole heirs presumptive of each other, the plaintiff and Mrs. Neblett reaffirmed their previous agreement, and again agreed that on the death of either her property should devolve upon the other through the means of provisions contained in mutual wills, which were to be executed at once and not revoked under any circumstances during their joint lives; that the will of plaintiff was to provide a specific legacy of $10,000 to A. Viola Neblett, to be paid before any other legacy; then, after certain other minor legacies, the entire residue of plaintiff's estate was to be given to Mrs. Neblett; while the will of the said A. Viola Neblett, after a small specific pecuniary legacy to another person who was her namesake, was to give to plaintiff the entire residue of her estate. That in the year 1892, Mrs. Neblett, in pursuance of said agreement, for valuable consideration received of the plaintiff, made and duly executed her will containing

the provisions above recited, said will being read over to plaintiff and approved by her; that at the same time, the plaintiff, in pursuance of said agreement, made and duly executed her will containing the provisions agreed upon in favor of Mrs. Neblett, as above recited, which will was submitted to and approved by Mrs. Neblett. That the plaintiff and Mrs. Neblett thereupon agreed that said wills should not, under any circumstances, be revoked, but should stand as a complete settlement or family arrangement of the property of which they should respectively die possessed; and that said property of each, except the specific legacies before mentioned as being given to others, should upon her death descend to the survivor, and neither of them should do anything to interfere with the succession of the other to such property as she might leave. That at the time of the execution of mutual wills as above set forth, owing to the difference of their respective conditions of health, the plaintiff's health being bad and Mrs. Neblett's apparently good, and in their ages, the plaintiff being far advanced in years and Mrs. Neblett much younger, the life expectancy of Mrs. Neblett was considerably longer than that of the plaintiff. That plaintiff and Mrs. Neblett were each possessed of considerable property, consisting almost entirely of stocks, bonds, mortgages, notes and other personal property; and that the said wills were executed at the repeated suggestions and requests of Mrs. Neblett. That the last mentioned will of plaintiff remains unrevoked to the time of this action; that ever since the making of her first mentioned will and the agreement aforesaid, the plaintiff has conducted herself in the management of her property with reference to said arrangement, and made only such investments and changes in her property as were consonant therewith and with the view of carrying it into effect, and has refrained from disposing of or exercising power over her property that would in any way defeat the succession thereto of Mrs. Neblett, pursuant to said agreement; that the plaintiff has all the time relied on the promises and assurances of Mrs. Neblett, and considered herself

36—57

bound not to revoke her will; she supposed until after the death of Mrs. Neblett that her aforesaid will remained likewise unbroken. That the aforesaid arrangement between plaintiff and Mrs. Neblett was well known to George W. Sirrine and Mrs. S. E. Sirrine. That in the year 1896, Mrs. Neblett became very ill and up to the time of her death, which occurred April 27, 1897, was in great suffering, and it became necessary to administer to her great quantities of morphine and other opiates, and that for a long time before her death she had been under the influence of morphine, and by reason thereof and weakness from illness was not in full possession of her faculties. That while in such mental condition she was induced to execute a paper, on April 9, 1897, purporting to be a last will and testatment. That undue influence was exercised upon the mind of Mrs. Neblett to induce her to execute said instrument, and to violate the arrangement or contract and to revoke the will which she had previously made in behalf of plaintiff. That in order to effectuate said purposes, the Neblett Free Library Association was organized in the city of Greenville, the corporators of which were well aware of the arrangement between the plaintiff and Mrs. Neblett, and of Mrs. Neblett's agreement to devise her property aforesaid to the plaintiff; and after the organization of the said corporation, Mrs. Neblett was induced, as aforesaid, to sign a paper purporting to be her last will and testament, by which she gave the great bulk of her property to the said Neblett Free Library Association, the amount of said gift being estimated to be at least $17,000, and consisting almost entirely of stocks, bonds and other personal property, and made such other disposition as appears by reference to said will. That the provisions contained in the last mentioned instrument are in violation of the agreement between plaintiff and Mrs. Neblett, and in fraud of the rights of plaintiff, and that it was secretly executed and all knowledge thereof kept from plaintiff, who in ignorance of such attempted changes in the will of Mrs. Neblett, allowed her own to remain unrevoked until the death of Mrs. Neblett.

That said paper, purporting to be the last will and testament of Mrs. Neblett, has been admitted to probate and letters testamentary issued to G. W. Sirrine, as executor. That plaintiff does not know the exact value of the estate of Mrs. Neblett; but believes it to be worth over $25,000; that it consists altogether of personal property. That said agreement between plaintiff and Mrs. Neblett was binding in law and equity, and thereby a trust was imposed upon the property of each in favor of the other, and that from this trust or equity arises the right in the survivor to have the property of the deceased turned over to her as her own, subject to the dispositions heretofore set forth, and that the property in the hands of G. W. Sirrine and all legatees under said will is subject to said trust. That plaintiff is willing that certain of the specific legacies mentioned in said will be turned over to the respective legatees. That Mrs. Neblett left no debts but one of $1,500 to plaintiff, and the funeral expenses and expenses of the last illness, amounting to not more than three or four hundred dollars, and that she left on hand enough cash to pay the same. The will of Mrs. Turnipseed and also the last will and testament of Mrs. Neblett are attached to the complaint as exhibits.

The answer of the executor, after putting in issue substantially all the facts alleged in the complaint out of which plaintiff's cause of action arises, alleges that the estate of Mrs. Neblett consisted of both real and personal property; that the alleged agreement to make mutual or reciprocal wills was without consideration; and that said agreement was not in writing, and was within the provisions of the statute of frauds. The answers of Mrs. Sirrine and the Neblett Free Library Association raise the same issues as that of their codefendant, the executor. The other defendants have not answered.

When the case was called for trial, a motion was made by counsel for the plaintiff to refer certain issues to a jury. The issues proposed involved substantially the questions: 1st. Did Mrs. Turnipseed and Mrs. Neblett agree to make wills in

favor of each other? 2d. Was such agreement within any
of the provisions of the statute of frauds? 3d. Was such
agreement based upon a valuable consideration? 4th. Were
the wills executed, and, if so, was it agreed that they should
be irrevocable? 5th. Was undue influence used to induce
Mrs. Neblett to make the will of April, 1897, which became
operative as her last will and testament? It seemed to me
that upon the last of the issues, at least, the Court should
have the assistance of a jury, and against the objection of
counsel for the defendants, I ordered all the proposed issues
to the jury. Thereupon, a great deal of testimony was of-
fered, at the conclusion of which I deemed it established
beyond question that the parties had agreed to make mutual
wills; that such wills were accordingly executed and were
understood by the parties to be irrevocable; and further, I
was satisfied that the question of undue influence or the cir-
cumstances under which Mrs. Neblett made her will in April,
1897, was irrelevant to the main issue in the case—first, be-
cause no attack is made in this action upon the validity of
that will; and secondly, because the plaintiff had proved by
her own witnesses that Mrs. Neblett destroyed the will in
favor of plaintiff, and made another will in 1896, thereby
revoking the first mentioned will and annulling her agree-
ment with Mrs. Turnipseed, so far as she was able to do so,
and the will of 1897 only revoked that of 1896. The re-
maining issues before the jury involved nice questions of law
in the determination of which the opinion of a jury can be
of but little value; while the Court was confronted with the
embarrassing fact that, under the provisions of our statute
of 1890, regulating the submission of issues in a chancery
case to a jury, the decision of the jury upon these questions
of law would be conclusive of the case, the only escape from
which decision, if unsatisfactory, would be to set aside the
findings of the jury and put the parties to the expense and
vexatious delays of a new trial. I, therefore, vacated the
order submitting issues and discharged the jury.'

The cause was very ably and exhaustively argued in its

various aspects by counsel on both sides. The first question arising in the case is as to the existence of the agreement between Mrs. Neblett and Mrs. Turnipseed to make wills in favor of each other. As stated above, the testimony of witnesses who have no interest in the matter and whose veracity is unquestionable, as to the admissions of Mrs. Neblett, proves conclusively the existence of such agreement, and also that the wills were executed in accordance with the agreement. I think it equally as well established that Mrs. Neblett considered herself bound not to revoke her will thus made. Her language to Miss Austin was: "That will will stand, no matter how estranged we may become. We may not speak to each other, but those wills are binding and cannot be broken." Having broken her agreement and revoked the will, the main issue now is whether the Court will enforce the specific performance of the contract. The equitable doctrine of specific performance applies to agreements to make wills as completely as to any other class of contracts. *Rivers* v. *Rivers,* 3 DeS., 190; *McKeegan* v. *O'Neal,* 22 C. C., 454. And the Court proceeds in the application of the doctrine in such cases upon the same principles as in all other cases of specific performance. *Fogle* v. *St. Michael's Church,* 48 S. C., 86. The first requisite to the exercise of this jurisdiction is that it shall be clearly proved that there was an agreement. In the case under consideration, the witness, Frances Whitmire, testifies that Mrs. Neblett and Mrs. Turnipseed were talking about making their wills. "Mrs. Neblett said, 'Aunt Sue, have you made up your mind to do what you said you were going to do?' and she said: 'Yes, I have, but I was only waiting on you to say what you were going to do about it.' Mrs. Neblett said: 'Well, we had better come to an agreement.' * * * Miss Viola says: 'Now, Aunt Sue, I want you to be satisfied with what you do;' and Miss Sue said: 'I am, Viola, and I want you to be satisfied, too.' * * * Miss Viola says: 'Aunt Sue, we have got our minds together, and we will send for Mr. Dill.'" The testimony of Mr. Lewis, Miss Austin, Miss Lewis, Mrs. Tucker and others, as to the

subsequent admissions of Mrs. Neblett that there was such
an agreement, fully corroborate Frances Whitmire, and
clearly proves the fact.   The agreement as proved must be
definite and certain as to the parties, the subject matter and
the consideration.   There can be no question here as to the
parties, either as to their identity or their competency to con-
tract.   The subject matter is equally as clearly ascertained,
embracing the entire estate of each of the parties, with cer-
tain explicit exceptions.   On the part of Mrs. Neblett it em-
braced all of her estate, real and personal, except a small
pecuniary legacy to her namesake, Viola A. N. Doolittle;
while on the part of Mrs. Turnipseed, it embraced a legacy of
$10,000, and also the residue of her estate, real and personal,
after pecuniary legacies amounting to $1,700 were paid and
the gifts of certain articles of personal property were made to
other parties.   The subject matter of the agreement was
thus definitely expressed, and certainly there is nothing bet-
ter settled than that testamentary agreements with reference
to one's property are lawful and not against public policy.

Was the agreement based upon adequate consideration?
The immediate consideration in the contemplation of the
parties at the time of entering into the agreement was the
sure prospect which each thus secured of succeeding to the
ownership of almost the whole of the other's estate and the
resulting family arrangement thus effected in reference to
both estates.   This was surely consideration sufficient to
support the agreement on both sides.   "Consideration suffi-
cient to support an executory contract," says Judge O'Neal,
"need not be an exact *quid pro quo*.   Anything which is a
benefit to the party promising and which he could not other-
wise obtain, or which puts the other party to trouble, incon-
venience or loss, will prevent the contract from being *nudum
pactum*."   *Gee v. Hicks,* Rich. Eq. Ca., 15.   In this view
the expenses of having the papers prepared might be deemed
adequate consideration in the absence of any other, but as we
have seen, there was other and far greater consideration
moving both parties in this case.   The evidence establishes a

complete contract—'a mutual agreement between competent parties for valuable consideration touching a lawful subject matter,' which was neither unfair nor unreasonable.

The defendants urge that the contract cannot be enforced because within the statute of frauds. This defense needs to be examined in its full scope. The allegations of all the answers are, substantially, that Mrs. Neblett's estate at the time of her death consisted of both real and personal property; that the alleged agreement was not in writing, and the defendants plead the statute of frauds. The objection that this is too general a plea to be considered, is untenable. It has been the established doctrine in this State almost from the creation of our courts, that the defendants may have the benefit of the statute without specifically pleading it when he pleads the general issue, and the answers in this case are, in effect, the general issue, with the addition of affirmative defenses. The plea of the statute in this case, while it might have been more fully expressed, is sufficient to give the plaintiff the fullest notice of the matters which would be relied on in support of the defense. There are three provisions of the statute of frauds invoked as a bar to this action, any one of which, if established, is sufficient to defeat it, to wit: the fourth and fifth clauses of section 4 and the fourth clause of section 17. With reference to the fifth clause of section 4, that the agreement was not to be performed within a year, it is sufficient to say that all agreements whose performance is contingent upon the happening of some event which may occur within a year are considered as, in the intention of the parties, to be performed within a year, and, therefore, not within the statute. *Walker* v. *R. R. Co.,* 26 S. C., 88. An agreement to make a will involves such contingency. *Izard* v. *Middleton,* 1 DeS., 116. The fourth clause of section 4 declares that no action shall be brought upon any contract or sale of lands, unless the agreement be in writing, signed, etc.; while section 17 provides in its fourth clause that no contract for the sale of goods for the price of $50, or more, shall be allowed to be good, except that some note or memorandum

in writing of the bargain be made and signed, etc. It is uncertain, from the evidence, whether Mrs. Neblett owned any land at the time of her death, of which time alone the agreement speaks, and I have not thought it necessary to send the case back for further testimony upon that point, but assume that she had no real estate at that time. If her estate did not comprise any realty, then the fourth clause of section 4 does not apply; if it did include realty, then said clause does apply, unless there was either a written and signed agreement or such part performance as would take the case out of the provision of the statute for the purpose of enforcing specific performance. There was no such part performance as the law contemplates. The making of the wills in pursuance of the agreement was in one sense complete performance of the agreement on both sides, but in its proper sense that act was but the first step towards the performance of an agreement which could not be complete till the death of one of the parties should render her will effective. It left the plaintiff in the exclusive possession, control and enjoyment of all her property, and did not change her situation in relation thereto to her injury. The great bulk, if not the whole, of Mrs. Neblett's estate consists of personal property. It is, therefore, an important inquiry whether or not the provisions of section 17 of the statute of frauds applies. This will depend, first of all, upon the question whether or not agreement to make a will of personal property is a contract for the sale of such property. A sale is the transfer of the ownership of some article in consideration of a price in money. A contract to make a will of personal property in consideration of a sum of money paid or promised would be clearly a contract for the sale of such property. 'A will is considered in the nature of a conveyance by way of appointment.' *Gould* v. *Mansfield*, 4 Am. Reps., 574, citing *Harweed* v. *Goodright, Comp.,* 87, 90. 'It doth as effectually give and transfer estates, and alter the property of lands and *goods,* as acts executed by deeds in the lifetime of the parties.' 1 Shep. Touchst., 402. Hence, 'a devisee comes within the legal

definition of one who takes by purchase,' and it has been held in numerous cases that a contract to devise is within the statute of frauds. It would seem that a contract to make a will of personalty upon any valuable consideration would in like manner be deemed a contract for the sale of personalty. Chancellor Kent's definition of a sale is 'a contract for the transfer of property from one person to another for a valuable consideration.' 2 Kent, 468. I am convinced that the statute, which is remedial and should receive a liberal construction, uses the term 'sale' in this larger sense rather than in its narrow technical meaning of a transfer for money alone. 'When the title to property, either real or personal, is to be acquired by purchase, the statute of frauds will operate upon and affect the contract in precisely the same manner, whether the consideration for the purchase is to be paid in services, money or anything else.' *Wallace* v. *Long,* 55 Am. Rep., 225. In that case the agreement was to make a will of both real and personal property, and it was held to be within the statute. The case of Gould *v.* Mansfield, cited above, is strikingly like the case under consideration in its facts. Two women named Gould (what the relationship was is not revealed by the report in the Am. Repts.), agreed to make wills in favor of each other of their entire estate, both real and personal. The wills were accordingly executed, and each agreed not to revoke her will or to make any different disposition of her property. The plaintiff allowed her will to stand until the death of the other party, Nancy Gould, and, supposing that Nancy's reciprocal will still existed, performed services and expended money for her. Nancy made another will which was admitted to probate, giving her property to others. The two estates consisted mainly of realty, but the agreement related to both real and personal property. The Court held the case to be within the statute of frauds as to the lands, but did not consider the statute as to the personal property, it being of little value, and the contract indivisible.

The agreement in this case, then, assuming that it relates

only to personal property, is within the 17th section of the statute of frauds, for the value of the property intended to be transferred is far in excess of $50. The argument that it was uncertain what estate either Mrs. Neblett or Mrs. Turnipseed would leave, and that the consideration thus might fall below $50, cannot avail, for the fact is that Mrs. Neblett's estate is ascertained to be worth many times that amount. 8 Am. & Eng. Ency. of Law, 710, and note.

The plaintiff's counsel argued very ingeniously, in order to escape the provisions of the statute of frauds, that, the parties being sole heirs of each other, the agreement was in effect a contract to allow the estate of the one dying first to descend according to law—in other words, a contract to die intestate; and that it was thus not a contract for the sale of either land or personalty. The authority relied on mainly is the case of *Seabrook* v. *Seabrook,* 10 Rich. Eq., 496. The doctrine is thus stated by Chancellor Dargan in the Circuit decree, which was affirmed on appeal: 'It is undoubted law, that where a testator gives by his will the same estate to the same persons who would be entitled to take that estate by operation of law in case of an intestacy, the devise or legacy will be void, and the right of the party or parties entitled will be referred to the law of distributions and descents. If there be any variation between the dispositions which the will and which the law makes in such a case, either in regard to the persons who are to take or the quantity of the estate, the title will be referred to the will.' Assuming that the doctrine applies to an heir presumptive, whose right to take by inheritance or distribution is liable to be defeated by the coming of an heir apparent, or by other change in the condition or relations of the collateral ancestor, and assuming also that the doctrine extends to personal as well as real property, the title to which, under our law, passes not to the heir but to the personal representative—still the doctrine can, by its own terms, have no application under the facts of this case. The agreement was that a part of Mrs. Neblett's property was to pass by her will to Viola A. N. Doolittle, a person not related to

her, while a part of Mrs. Turnipseed's property was to pass by her will to her deceased husband's relatives, who could not inherit from her. This constitutes a variation certainly between the persons who would take under the will and under the law, and defeats the application of the doctrine. But even if this argument could be sustained, it would defeat its own object. For by the allegations of the complaint and by the evidence Mrs. Neblett's estate consists wholly of personalty. If, now, she had died intestate, the title to all her property would have passed to her administrator, and no agreement or act of hers short of an actual transfer could prevent it. From the administrator, after the payment of administration expenses and debts, the residue would have passed by distribution under the law to those entitled. But by our statute, sec. 2073, Rev. Stats. of 1893, 'no distribution of the goods of any person dying intestate shall be made till one year be fully expired after the intestate's death.' So that, in that view, the agreement could not by any possibility be held to be intended by the parties to be performed within a year, and plaintiff in escaping the Scylla of the 17th section would be engulfed in the Charybdis of section 4.

The last inquiry is, was the agreement or any memorandum or note thereof in writing and signed by the parties? I cannot find in the evidence sufficient proof that it was. Conceding that Mrs. Turnipseed could be allowed under section 400 of the Code, to testify that Mrs. Neblett signed a paper and that she signed the same paper, she was not allowed to state the contents of the paper nor its character, and we are left to mere speculation as to these vital matters. Frances Whitmire says they were talking about writing their wills, that they were writing something, and that both had papers, etc., but she does not say what the papers contained nor whether they were signed. It is impossible for the Court to say from this testimony that the agreement or a memorandum of it was reduced to writing and signed. The declarations of Mrs. Neblett that the agreement was very binding, as binding as it could be made, and that it could not be

broken, afford only grounds for conjecture as to her concep-
tion of what was binding and what gave it its binding force.
If any presumption that the agreement was in writing can
arise from her declarations, it is met by the opposite pre-
sumption from the fact that the writing is not produced nor ·
its absence accounted for.    I am forced to conclude, as a
matter of fact, that the agreement was not in writing.    Such
being the fact, the statute renders it void, and this Court has
no power to enforce it.

It is, therefore, adjudged and decreed, that the complaint
be dismissed with costs."

From this decree, the plaintiff appeals.

*Mr. George Johnstone,* for appellants, cites : *As to power
of revocation after contract completed by execution of wills:*
Gary v. James, 4 DeS., 48 S. C., 86.    *A promise is ample
consideration for a promise:* 56 L. Tr., 426; 48 Vt., 230.
*As to defense of inadequacy of consideration:* 2 Hill Ch.,
121 ; 1 Cox. Ch., 38; Rich. Eq. Ca., 15.    *As to the legal pre-
sumption as applied to admissions:* 18 S. C., 489; 26 S. C.,
166; 8 Gray, 562; Bail. Eq., 136.    *Stat. of frauds do not
apply:* 34 S. C., 496; 10 Rich. Eq., 495; 49 A. S. T. R., 49;
McM. Eq., 206, 87; 3 Strob. L., 196; 5 Rich. L., 14; 2
McCh., 269.    *Parol testimony competent to prove any con-
tract not within statute:* 27 S. C., 1; 11 Rich. Eq., 574; Rich.
Eq., 146; 37 S. C., 56; 5 Rich. Eq., 365; 2 DeS., 144; Harp.
Eq., 258.    *Partly performed contract not within statute:* 3
Rich. Eq., 429; 9 Rich., 215; 1 DeS., 201 ; 5 Rich., 14.    *As
to effect of representations:* 100 U. S., 578; 15 Eq. L. R.,
121; L. R. Ch. D., 776; 12 Ct. & Fin., 62 ; 49 S. C., 74; Rich.
Eq. Ca., 1.    *Trust in personalty may rest in parol:* 14 S. C.,
216; 14 S. C., 486; 55 S. C., 456; 4 DeS., 508.    *Family ar-
rangements are upheld by Courts of Equity:* 2 P. F. S., 370;
41 N. Y., 480; 2 Ch. App. L. R., 269; 6 Md., 449; 3 J. & L.
T., 443.    *As to method of relief:* 4 DeS., 185; 48 S. C., 86.

*Messrs. Haynesworth & Parker,* also for appellant, cite :

*As to effect of admissions:* 18 S. C., 489; 26 S. C., 166; 8 Gray, 562; 6 Cush., 520; 15 At. R., 249; 49 S. C., 74; Rich. Eq. Ca., 1. *Agreement is supported by sufficient considera- tion, and not opposed to public policy:* Rich. Eq. Ca., 1; 41 N. Y., 450; 1 DeS., 116, 366; 3 DeS., 190, 514; 4 DeS., 185; 22 S. C., 454; 48 S. C., 86; 49 S. C., 78; 3 Mo., 389; 60 A. R., 273. *Not a contract of sale, but equivalent to an agree- ment not to disinherit:* 10 Rich. Eq., 495; 4 Rich. Eq., 474; 64 Hun., 600. *And such agreement is not required by stat- ute of frauds to be in writing:* 1 Ver., 48; 1 DeS., 121; 49 At. R., 479; 45 N. E. R., 134. *Statute does not apply to agreements creating trusts in personal property:* 14 S. C., 216; 55 S. C., 614; McM. Eq., 87; 9 Rich., 103. *Wills having been executed, it only remained that they should not be revoked—this not a contract of sale:* 3 DeS., 195; 60 A. R., 273; 16 Ind., 125; 11 Metc., 411; 11 Gray, 168; 33 N. H., 239; 2 R. I., 330; 34 Vt., 589; 77 A. D., 558; 93 A. D., 84; Rich. Eq. Ca., 5; 34 S. C., 504. *Case does not come within provision of statute prohibiting action on contract not to be performed in one year:* 26 S. C., 88; 3 Strob., 196; 71 A. D., 196; 97 Mass., 212; 66 A. D., 720; 34 Vt., 589; 7 R. I., 330; 7 A. R., 100. *In cases of like import equity will not permit one to revoke without notice to the other:* 3 DeS., 194; 22 S. C., 467; 48 S. C., 86; 3 Rich. Eq., 255; 1 Rich. Eq., 63; 50 N. E. R., 265. *As to remedy sought:* 3 Rich. Eq., 424; 1 Rich. Eq., 95; 2 Rich. Eq., 477; 151 N. Y., 323; 3 DeS., 190; 4 DeS., 185; 22 S. C., 454; 48 S. C., 86; 1 Rich. Eq., 184.

*Messrs. Ansel, Cothran & Cothran, Joseph A. McCul- lough, C. F. Dill,* and *William G. Sirrine,* contra, cite: *A contract to devise an interest in lands is within statute of frauds:* 4 Am. R., 135; 55 Ib., 222; 2 Sand. Ch., 19; 19 S. E. R., 739; 9 Am. St. R., 642. *A parol agreement to make mutual wills is within the statute of frauds:* 53 Am. D., 538; 1 DeS., 122; 17 Am. St. R., 125; 50 N. E., 265; 19 S. E., 739; 4 Am. Rep., 573. *There may be a promise which is not*

*a valid contract:* 4 Am. D., 306; 17 Am. St. R., 129; 35 At. R., 753; 66 N. Y., 226; 3 Rich. Eq., 431; 53 Am. D., 539; 22 S. C., 476. *Contract to devise realty and personalty is indivisible:* 38 Am. St. R., 378; 54 Ib., 476. *As to kind of contracts that will be enforced:* 22 S. C., 468; 3 Ves., 402; 21 S. C., 119; 22 N. J. Eq., 62; 7 Rich. Eq., 382. *Statute applies to an agreement to distribute an estate according to statute:* 48 S. C., 91; 10 Rich. Eq., 504; 54 Am. St. R., 71. *Such contract cannot be performed within one year:* Rev. Stat., 2073; 10 Rich. Eq., 495. *Alleged part performance must so change position of performing party, as that nothing will restore his former condition but specific performance:* Hunter v. *Mills,* 29 S. C.; 2 McC. Ch., 269; 35 At. R., 753; 2 DeS., 170; 1 DeS., 120; 27 S. E. R., 580. *How such performance must be proved:* 1 John. Ch., 131; 7 Rich. Eq., 385; 9 S. E. R., 973; 28 Am. Dec., 49; 53 Am. Dec., 540; 19 S. E. R., 739. *Parol evidence will not support an agreement void under the statute:* 7 Rich. Eq., 378; 7 S. E. R., 489; 1 John. Ch., 273; 39 Pa. St., 135; 9 S. E. R., 971; 27 S. C., 363; 2 Strob. Eq., 75. *Object of statute of frauds:* 7 Rich. Eq., 384; 1 John Ch., 131; 34 Pa., 381. *Specific performance not matter of right, rights of innocent parties will not be invaded:* 21 S. C., 124; 1 DeS., 257; 2 DeS., 188; 7 Rich. Eq., 385.

The opinion in this case was filed on April 16, 1900, but *remittitur* stayed by order on petition for rehearing until

May 9, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. In 1892, the plaintiff and her niece, Mrs. A. Viola Neblett, entered into an agreement to make mutual wills, leaving the bulk of the property of the one to the other. The plaintiff performed her part of the contract, but Mrs. Neblett died in 1897, making a disposition of her property by will different from that mentioned in the agreement. This is an action to enforce specific performance of said agreement. His Honor, Judge Klugh, makes a de-

tailed statement of the facts in his decree dismissing the complaint.

The plaintiff appealed upon numerous exceptions, and the respondents gave notice of additional grounds, upon which they would ask that the decree be sustained. This Court agrees with the Circuit Judge, in his findings of fact and conclusions of law, except as to the fourth clause of section 4 and the fourth clause of section 17 of the statute of frauds. This disposes of all the exceptions except those relating to these clauses.

The fourth clause of section 4 (Rev. Stat., sec. 2151) is as follows: "No action shall be brought * * * upon any contract on sale of lands, tenements or hereditaments, or any interest in or concerning them, * * * unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." In his decree the Circuit Judge says: * * * "by the allegations of the complaint and by the evidence, Mrs. Neblett's estate consists solely of personalities." The only one of the respondent's additional grounds relating to the kind of property Mrs. Neblett owned at her death is the seventh, which is as follows: "His Honor erred in holding that it is uncertain from the evidence whether Mrs. Neblett owned any land at the time of her death, at which time alone the agreement speaks, it being respectfully submitted that the agreement speaks from the time it was entered into, at which time the evidence does show that Mrs. Neblett owned real estate." It will be seen at a glance that it was not the object of this additional ground to raise the question whether Mrs. Neblett owned any land at the time of her death, but to complain of error on the part of the Circuit Judge in ruling that the agreement spoke at the time of Mrs. Neblett's death, instead of at the time it was entered into. We will discuss the question with the fact established, that Mrs. Neblett did not own any real estate at the time of her death. The Circuit Judge

says: "The making of the wills, in pursuance of the agreement, was, in one sense, complete performance of the agreement on both sides; but in its proper sense, that act was but the first step towards the performance of an agreement which could not be complete till the death of one of the parties should render her will effective." Thus showing that the agreement, while binding between the parties, was not intended to have any effect upon the property of the respective parties until one of them died, and then upon the property of the one so dying. From the time the agreement was entered into until one of the parties died, each had full control over her property. Neither was to have an interest in the property of the other until that time. As the agreement was not to have any effect upon the property other than that which the party first dying owned at the time of her death, and as Mrs. Neblett owned no real estate at the time, we fail to see how the clause under consideration has any application to the case.

The exceptions relating to the fourth clause of section 17 (Rev. Stat., 2152,) is as follows: "No contract for the sale of any goods, wares and merchandise, for the price of $50 or upwards, shall be allowed to be good, except the buyer shall accept part of the goods so sold, and actually receive the same, or giving something in earnest to bind the bargain, or in part payment, or so that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged by such contract, or their agents thereunto lawfully authorized." The case of *Fogle* v. *Church,* 48 S. C., 86, and the authorities therein cited, show that a party may enter into a valid agreement to dispose of his property by will, and specific performance will be decreed as in other proper cases. The question, then, is whether the plaintiff is precluded by the foregoing section from proving the agreement. The authorities relied upon by the respondents show (and the principle is well settled) that performance by one of the parties will take a case out of the statute, when non-compliance with the agreement by the other party would place him in such a position as to be a fraud

upon his rights, unless specific performance was decreed. They contend, however, that the plaintiff did not suffer any injury, and that she was in the same condition as to her property rights, when Mrs. Neblett died, as when the agreement was entered into. Let us see. When the agreement was entered into in 1892, the plaintiff was then far advanced in life, being more than sixty years of age, as she is now more than seventy years. The plaintiff, under the agreement, bequeathed to Mrs. Neblett a specific legacy of $10,000, to be paid before any other legacies, and after bequeathing certain other legacies, willed to her the residue of her estate. If the plaintiff had died before Mrs. Neblett, she would have received at least as much as $10,000 from the plaintiff's estate. She, therefore, had the benefit of what might be termed the risk from 1892 until 1897. If Mrs. Neblett had taken out a policy of insurance on her aunt's life for $10,000, it would have cost her a large sum of money if any company would have taken such a risk, as she was then very old and infirm. Yet Mrs. Neblett received the benefit, during that time, of what was equivalent to a policy for that amount or even more. It will not do to say that she received no benefit as the plaintiff did not die, any more than it would lie in the mouth of a man who paid his premium of insurance with a note to say there was a failure of consideration as he did not die or his property was not burned. It is impossible to make an exact calculation as to the extent to which Mrs. Neblett was benefited, because she not only was to receive the specific legacy of $10,000, but also the residue of the estate which was always uncertain, and of course the plaintiff did not at all times have the same amount of property on hand. As this benefit cannot be valued with exactness, and as it would be a fraud upon the rights of the plaintiff to allow Mrs. Neblett to receive it without accounting therefor, equity will decree specific performance.

The respondents rely upon the case of *Izard* v. *Middleton*, 1 DeS., 116. This is a case in which there was an agreement to make mutual wills. In the report of the case we find the

following: "The Chancellor then proceeded as follows: 'There are several points to be considered in this case. First. Is it within the statute of frauds? If not, is there, secondly, sufficient parol proof of the agreement? Thirdly. Has there been a performance of the agreement by either of the parties?' * * * The words of the statute which apply to this case are 'or upon any agreement which is not to be performed within the space of one year from the making thereof, unless in writing and signed, &c.'" This is the only clause of the statute that was considered, and it is only necessary to refer to the case of *Walker* v. *R. R. Co.*, 26 S. C., 88, and the authorities therein cited, to see that the Chancellor's construction of the statute was erroneous. The Court decided the second and third points against the complainant and dismissed his bill. There is nothing in the case just mentioned conflicting with our conclusion. But even if the performance by the plaintiff of her part of the contract did not take the case out of the statute, the retention of benefits by Mrs. Neblett would raise an implied agreement to make compensation for them, and resort might be had to the original agreement for the purpose of determining the *kind* of compensation contemplated by the parties. *Carter* v. *Brown*, 3 S. C., 298. It is true, this Court cannot decree that a willl shall be made; but, as was said in the case of Fogle *v.* Church, it can determine that the plaintiff is equitable owner, and entitled to be clothed with the legal title to all the property which she would have received if the will had been made, and it so adjudged.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for such further proceedings as may be necessary to carry into effect the views herein announced.

Upon filing of petition for rehearing on April 26, 1900, the *remittitur* was stayed until May 9, 1900, when the petition was refused in the following order

Per Curiam. After careful consideration of this peti-

tion, we do not find that any material fact or principle of law has either been overlooked or disregarded; and hence there is no ground for a rehearing.

It is, therefore, ordered, that the petition be dismissed, and that the stay of the *remittitur* heretofore granted be revoked.