[No. 11127.  Department One.  September 13, 1913.]

*In the Matter of the Estate of* PETER EDWALL.
IDA EDWALL, *Appellant*, v. WARD JESSEPH, *Executor, et al.,*
*Respondents.*[1]

WILLS—REVOCATION—DEEDS AS TESTAMENTARY DOCUMENTS. Mutual deeds simultaneously executed by a husband and wife and placed in escrow under an agreement to deliver one to the survivor, and intended as testamentary disposition of their real estate, are revoked by the subsequent execution of wills.

FRAUDS, STATUTE OF—REAL PROPERTY—CONTRACTS TO DEVISE—IRREVOCABLE WILLS. An oral agreement in pursuance of which a husband and wife executed mutual wills devising their real estate to each other, and providing that such wills should be irrevocable except by mutual agreement or on notice, is within the statute of frauds and void.

SAME—MEMORANDUM—SUFFICIENCY. In such a case, the mutual wills, although executed simultaneously, are not a sufficient memorandum to take the case out of the operation of the statute of frauds where there was no reference in either will to any such contract.

SAME—MEMORANDUM. For the same reason, a testamentary disposition of their real estate by mutual deeds, simultaneously exe-

[1]Reported in 134 Pac. 1041.

cuted and to be delivered to the survivor upon the death of either, are not a sufficient memorandum to take the case out of the operation of the statute of frauds, where there was nothing in either will to show the contract or that one deed was executed in consideration of the other.

SAME—PART PERFORMANCE. The making of mutual wills by a husband and wife is not such a part performance of an oral contract to make irrevocable wills, devising the real estate of the parties to the survivor, as to take the same out of the operation of the statute of frauds.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered October 29, 1912, dismissing a will contest, after a hearing on the merits. Affirmed.

*Hurn & Upton*, for appellant.

*M. E. Jesseph* and *L. C. Jesseph*, for respondents.

PARKER, J.—This proceeding is in form a will contest, wherein Ida Edwall, the widow of Peter Edwall, deceased, seeks to have the will of her husband which was executed on July 9, 1910, set aside as void, and his will which was executed on July 3, 1909, established as his valid last will and testament. The proceeding is, also, in substance, an action to enforce specific performance of an alleged contract entered into between Ida Edwall and her deceased husband, by which they agreed to make mutual wills, and in pursuance of which contract they each executed wills on July 3, 1909. The will then so executed by Peter Edwall is the one she seeks to have established by this proceeding. A trial upon the merits resulted in a decree denying the relief prayed for by Ida Edwall, from which she has appealed. The principal question here involved is as to the validity and binding force of the alleged contract by which Ida Edwall and Peter Edwall agreed to make the wills of July 3, 1909, in the light of the statute of frauds. The facts disclosed by the record, as determinative of this problem, are, in substance, as follows:

Appellant was married to Peter Edwall in the year 1893. At that time each owned a considerable amount of land in

Lincoln county. They thereafter acquired some additional real property in Spokane county. They had no children. On January 20, 1909, Peter Edwall signed and duly acknowledged two warranty deeds, which in form purported to convey to appellant, his wife, real property situated in Lincoln and Spokane counties. At the same time, appellant signed and duly acknowledged two warranty deeds, which in form purported to convey to Peter Edwall, her husband, real property situated in Lincoln and Spokane counties. We assume that all of the real property then owned by each of them was described in these deeds. These deeds were then placed in the hands of one Rogers, of Spokane, who had prepared them for appellant and her husband, with the understanding that the deeds of the one who should die first should be immediately thereafter placed of record, and the survivor thereby become the owner of all of the property. It is manifest that at that time they took this method of testamentarily disposing of their property in lieu of making wills. These deeds upon their face are absolute warranty deeds, each reciting a consideration of "one dollar and other valuable considerations." Neither of them contain any statement whatever indicating the purpose or motive of their making, other than such as would be found in ordinary deeds with covenants of warranty. We have no evidence upon this subject, save oral testimony. Shortly thereafter, Peter Edwall procured the deeds from Rogers, without the knowledge of appellant, and caused the ones executed by appellant to him to be recorded. There is considerable controversy touching the motive of Peter Edwall in acquiring possession of these deeds. However, soon thereafter he sought to make amends by executing quitclaim deeds back to appellant, and causing the same to be recorded. Thereafter, on July 3, 1909, Peter Edwall executed his will in due form disposing of all of his property as follows:

"Know all men by these presents: That I, Peter Edwall, a resident of Spokane, Spokane County, Washington, of the

age of 57 years, being of sound and disposing mind, do hereby make, publish and declare this instrument to be my last will and testament, in manner and form following, to-wit:

"(1)   I hereby give, devise and bequeath to each of the following named persons, the sum of One ($1.00) Dollar: My sisters Kate Westerberg, and Mary Erickson, and my brothers Andrew Edwall and C. W. Edwall.

"(2)   I hereby give, devise and bequeath to my beloved wife, Ida Edwall, all the rest, remainder and residue of all the property of every kind, and description, real, personal and mixed, that I may have, own or be entitled to, at the date of my death, to have and to hold in her own right absolutely forever.

"In witness whereof, I have hereunto set my hand at Spokane, Spokane County, Washington, this 3rd day of July, A. D. 1909.

"(Signed)        Peter Edwall."

On the same day, and evidently simultaneously with the execution of this will of Peter Edwall, appellant executed her will in due form disposing of all of her property, as follows:

"Know all men by these presents: That I, Ida Edwall, wife of Peter Edwall, residing at Spokane, Spokane County, Washington, being of the age of 68 years, and of sound and disposing mind, do hereby make, publish and declare this instrument to be my last will and testament, in manner and form the following, to-wit:

"(1)   I give, devise and bequeath to each of my sisters, Anna Anderson, Lota Anderson and Kate Shlander, and my brothers Andrew Edquist and Nels Anderson, the sum of One ($1.00) Dollar.

"(2)   I give, devise and bequeath to my beloved husband, Peter Edwall, all the rest, remainder and residue of all the property of every kind, and description, real, personal and mixed, that I may have, own, or be entitled to, at the date of my death, to have and to hold in his own right absolutely forever.

"In witness whereof, I have hereunto set my hand at Spokane, Spokane County, Washington, this 3rd day of July, A. D. 1909.

"(Signed)        Ida Edwall."

The execution of these wills was attested by the same witnesses. Neither of them contained any statement or provision other than as above quoted, so they bear no evidence whatever upon their face indicating that one was executed in consideration of the other, or that they were executed in pursuance of any contract which would in the least affect or curtail the power of either testator to revoke the same. We have no evidence touching the making of such a contract, save oral testimony. There is evidence tending to show that, at the time of making these wills, appellant had not learned of the acquiring of the possession of the deeds by her husband, but, however that may be, it seems plain that they made these wills with the view of their taking the place of the deeds. Assuming that the deeds were only testamentary documents, nothing can be clearer than that the making of these wills was a revocation thereof.

Thereafter, on July 9, 1910, Peter Edwall executed in due form another will, wherein he expressly revoked all former wills by him executed, appointed Ward Jesseph, this respondent, his executor, and devised all of his estate to Ward Jesseph in trust, so that his wife, this appellant, would receive during her lifetime the larger portion of the income therefrom, and upon her death his estate to be distributed to certain of his relatives, naming them. For the sake of argument, we shall assume that this last will was made without notice to the appellant, and that she did not learn of the making of it until after her husband's death, which occurred on January 8, 1912. Thereafter, on January 26, 1912, this last will of Peter Edwall was admitted to probate in the superior court for Spokane county and Ward Jesseph, this respondent, entered upon his duties as executor thereof. Thereafter, on March 14, 1912, appellant filed her petition contesting this last will of Peter Edwall upon two grounds, stated in appellant's brief, as follows:

"(1)  That the mutual wills executed by deceased and petitioner on July 3, 1909, under the oral agreement that the

survivor should have all the property of the one dying first, were valid and binding, and were irrevocable, except by agreement or upon notice by one to the other of his intention to revoke his said will, which notice was never given petitioner, and because thereof, deceased had no property upon which the will admitted to probate could operate, and same was void.

"(2)    That at the time of the execution of said will, deceased was mentally incompetent to execute a valid will."

Citation was thereupon issued against respondent, the executor, and the legatees named in this last will, who answered appellant's petition, when a trial was had, resulting in a decree against the claims of appellant, as we have stated.

We do not understand that counsel for appellant make any serious contention here touching the competency of Peter Edwall to make a will at the time of executing this last will. We conclude, in any event, that the evidence wholly fails to show want of competency on his part at the time, as held by the trial court.

We proceed then to the examination of the question of the power of revocation of the will of July 3, 1909, in Peter Edwall, exercised by him in the making of his last will of July 9, 1910. We shall assume, for argument's sake, that there was introduced upon the trial sufficient oral evidence to show that the wills of July 3, 1909, were made in pursuance of such a contract between appellant and the deceased as would render those wills revocable before the death of either only by agreement or upon notice. This reduces our problem to the question of the binding force of such a contract, in the light of the statute of frauds, having in mind that the property disposed of by the wills was principally, if not all, real property. If there was no such contract binding in law upon Peter Edwall, manifestly his last will, which is here sought to be annulled, must prevail and be the measure of the rights of those now claiming his estate.

Is the contract relied upon by appellant within the statute of frauds? Must it be evidenced in writing in order to be

legally binding upon Peter Edwall? Let us remember that it is the alleged contract in pursuance of which the wills were . made, and not the wills as such, that we are here particularly concerned with. A will in itself may be perfect in its form and execution, and its validity as such be beyond controversy; yet furnish no evidence whatever of having been executed in pursuance of any contract or in consideration of any promise made to the testator by another. In so far as the will may, by statements made therein, evidence such a contract as is here relied upon, it will be viewed as any other written evidence of contract; but this is entirely apart from its aspect as a will. The comparative nature of wills and contracts and the application of the statute of frauds to the latter is well stated in Rood on Wills, at §§ 51, 54 and 55, as follows:

"The fundamental notion of a will, that it is purely voluntary, marks a strong contrast between it and a contract. The will gives the proposed beneficiary no claim, legal or equitable, against the testator, nor against his property, while the testator lives. The testator may change it to suit his varying fancy at any time, or destroy it altogether, without becoming liable in any way; and the will being revoked, the intended beneficiaries will have no claim on his estate."

"There is nothing peculiar about contracts to make provisions by will. An actual contract must be shown. The parties must have been competent. Their minds must have met on a certain and definite agreement; unless the facts imply a promise which would sustain an action on *quantum meruit*. Declaration of purpose to will, and hope of reward for offices performed, are both unavailing: These do not make out a contract."

"An agreement to give a money legacy is not required by the statute of frauds to be in writing; for it is not for the sale of lands or goods, and may be performed within a year. But contracts to allow land to descend by making no will, contracts to devise lands, and indivisible contracts to devise lands and goods, must be in writing, signed by the testator, unless there has been such a part performance as will take the case out of the operation of the statute."

In the note to *Best v. Gralapp*, 5 Am. & Eng. Ann. Cas. 495, the learned editor says:

"As an agreement to devise property is like any other agreement for the conveyance of lands, if it consists of an oral promise it is within the operation of the statute of frauds, and hence is not of itself an enforceable contract"; citing numerous authorities.

And in the text of 40 Cyc. 2117, it is said:

"An oral contract to make mutual wills disposing of real estate is within the statute of frauds; but it may be taken out of the operation of the statute, so as to be specifically enforceable, by a part performance."

This court adhered to this doctrine in *Swash v. Sharpstein*, 14 Wash. 426, 44 Pac. 862, 32 L. R. A. 796, where a contract to devise property was in question, involving both real and personal property. At page 435, Justice Scott, speaking for the court, said:

"If the contract is void as to the real estate, the plaintiff cannot enforce it as to the personalty either, for being void in part it is void as a whole. *Ellis v. Cary*, 74 Wis. 176 (17 Am. St. Rep. 125, 42 N. W. 252); *Pond v. Sheehan*, 132 Ill. 312 (23 N. E. 1018); *Gould v. Mansfield*, 103 Mass. 408 (4 Am. Rep. 573)."

We conclude, therefore, that the contract relied upon by appellant as rendering the wills of July 3, 1909, irrevocable, other than by agreement or upon notice, is within the statute of frauds, and that it cannot be recognized by us as of any force unless evidenced in writing or partially performed so as to relieve it from the operation of the statute of frauds.

Was the contract, relied upon by appellant as rendering these wills irrevocable, evidenced in writing? We have seen that neither of the wills contained any written evidence whatever pointing to the making of such a contract, nor does their language indicate any motive or consideration prompting their making, other than such as ordinarily flows from the relationship of blood and marriage existing between tes-

tator and devisee, motives so often prompting devises of property. In *Edson v. Parsons,* 155 N. Y. 555, 50 N. E. 265, the court of appeals had under consideration the wills of two sisters, elderly maiden ladies, living together, executed simultaneously, as were the wills here involved. After the making of the wills and after the death of one of the sisters and the probate of her will, the other sister made a will making a different disposition of her property. The contention of the residuary legatee under the former wills of the sisters was that the last will of the surviving sister did not revoke her former will, to his prejudice. Those wills, we think, within themselves came nearer showing evidence of having been made in pursuance of a contract between the sisters and that one was made in consideration of the other, than the wills here involved. Referring to the wills themselves as evidence of such a contract, Justice Gray, speaking for the court, at page 565, said:

"I know of no absolute rule of law, which impresses upon wills, similar in their cross provisions, that mutual character, by force of which the survivor's estate comes under a trust obligation. I understand that something more is needed to warrant equitable intervention and, in the absence of an express agreement, that it must be found in circumstances, which so surround the transaction as, imperatively, to compel the conclusion that the parties intended and undertook to bind themselves and their estates, irrevocably, in the event of the prior death of one."

It is true that in that case other evidence was presented in the nature of oral testimony tending to show such a contract or understanding, but the statute of frauds was apparently not involved, at least not considered. While the court there treated the question as one of fact rather than law, the remarks of the learned judge above quoted are of value here as showing that the wills within themselves were not sufficient to establish the making of such a contract. Further observation is made by the learned judge in that decision at page 568, as follows:

"A general maxim, which Equity recognizes, is that a testator's will is ambulatory until his death. It is a disposition of property, which neither can, nor is supposed to, take effect until after death. I think it needs no further argument to show that to attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and that the presumptions will not, and should not, take the place of proof."

In *Hale v. Hale*, 90 Va. 728, 19 S. E. 739, we have another instance of simultaneously executed wills by two sisters, wherein each gave her property to the other. At page 731, the court observed:

"On the other hand, the appellant contends that the case is not within the statute, because the wills in question are sufficient *memoranda* of the agreement to satisfy the requisitions of the statute. But can this view be maintained? We think not. An examination of the wills, which are exhibited with the bill, shows that each purports to be a mere will, and nothing else. Neither alludes to any contract or refers to any other writing; and the established rule is that the memorandum of a contract for the sale of real estate, required by the statute, must show, either on its face or by reference to some other writing, the contract between the parties, so that it can be understood without having recourse to parol proof. Browne, Stat. Frauds, sec. 371; 2 Kent, Comm., 511; *Parkhurst v. Van Cortland*, 1 Johns Ch. 273; *Williams v. Morris*, 95 U. S. 444."

In the case of *Cawley's Estate*, 136 Pa. 628, 20 Atl. 567, 10 L. R. A. 93, wills of a brother and sister were involved, which had been executed as a single document, in which their unity of action and purpose was clearly expressed, as follows:

" 'We, Benjamin Cawley and Mary Cawley, brother and sister, of the borough of Lewisburgh, in the county of Union, state of Pennsylvania, being of sound mind and disposing memory, and yet mindful of the uncertainty of life, do make and publish this our last will and testament, hereby revoking any will heretofore made by us, or either of us, and intend-

ing to dispose of the whole of our estate, both real and personal.' . . .

" 'I Benjamin Cawley, should I be the first to die, and I, Mary Cawley, should I be the first to die, give, devise and bequeath, and to the survivor of either of us, all the rest and residue of the decedent's estate, both real and personal, to have and to hold and enjoy the same during the life of the survivor, without impeachment of waste, with leave to use the body of the estate for necessity.' " ;

followed by provisions disposing of their estates after the death of the survivor to certain devisees, naming them. After the death of Benjamin, Mary made another will disposing of her property in a different manner. Holding that the first will was not irrevocable by her, even after she had received benefits under her brother's will, the court said:

"It is important to a correct understanding of the real ground for controversy, to bear in mind the peculiar characteristics of a contract, and those of a will. A contract is an agreement between parties for the doing or not doing of some particular thing. The undertaking of one party is made in consideration of something to be paid or done by or on behalf of the other party, so that the obligation to do, and the right to require performance, are reciprocal. A will, on the other hand, is simply a statement of a purpose or wish of the maker as it exists at the time. As often as his purpose or wish changes, he may change the expression of it. When and why a change shall be made, depends on himself alone. He is answerable to no one for his determination to make one rather than another disposition of his property. After he has written out his will and executed it in accordance with the forms of the law, it does not bind him; but, so long as he lives, he may change his purpose, with or without a reason, and his last purpose properly written out and executed is his 'last will and testament,' because death makes any further change impossible. The binding force of a contract comes from the *aggregatio mentium* of the parties. The binding force of a will comes from the fact that it is the last expressed purpose of the testator, in regard to the disposition of his property after his own death. While he lives, it is without force or value, but it begins to speak when he ceases to do so, and thereafter is heard in his stead."

Then, after reviewing the provisions of the document, the court continues:

"The singular number is invariably used throughout the will, each testator speaking for himself or herself only, and neither attempting to speak for the other or of the other's property. Each seems to have desired to make the same disposition of what he or she owned. Both adopted the same written expression of that desire, and executed it. The will so made must be regarded, therefore, as the separate will of each testator, as fully as though the will of each had been separately drawn up and signed. There was no joint property or joint devisee. It is not, therefore, a joint will. It is not a contract between the makers in form or in effect. No consideration passed from one to the other, and none is suggested, except the affectionate interest which this aged brother and sister felt for each other. This moved them to provide for each other's comfort by a life estate in the survivor, but beyond that each gave to the remainder-men only what each owned. Such a will is properly described by the phrase in *Evans v. Smith, supra,* as a double will. It must be construed and treated as the separate will of each testator who signed it, in the same manner as though a separate copy had been executed by each. It was therefore revocable by both. Benjamin Cawley did not revoke, and his will is to be executed in accordance with its terms. Mary Cawley has exercised the power of revocation, and changed the ultimate destination of her property. Her last will must be followed, therefore, in the distribution of her estate."

These views find support in the following decisions: *Schumaker v. Schmidt,* 44 Ala. 454, 4 Am. Rep. 135; *Allen v. Bromberg,* 163 Ala. 620, 50 South. 884, and *Buchanan v. Anderson,* 70 S. C. 454, 50 S. E. 12. We are of the opinion that these wills do not, of themselves, prove the making of any contract of mutuality on the part of the testators, nor that one was made in consideration of the other, though upon their face they appear to have been simultaneously executed before the same witnesses and were, as the evidence shows, placed for safe keeping together in the hands of a third person. So far as any written evidence such as is required by the

statute of frauds shows, these are individual wills of the simplest possible character, and there is no competent written evidence in this record tending to show that they were made in pursuance of any contract between the respective testators which would in the least impair their power of revocation. It follows that the making of the will of July 9, 1910, by Peter Edwall constituted an effectual revocation of his will of July 3, 1909, unless the effect of the statute of frauds was avoided by part performance of the alleged contract.

Some contention is made that the deeds which were executed January 20, 1909, with the view that the deeds of the one who should die first should then become effective, furnishes written evidence of the contract under which appellant claims. The trouble with this contention is that these deeds, in this respect, are in exactly the same condition as the wills. They are simple warranty deeds in form, as we have noticed, and prove nothing upon their face other than that they were signed and acknowledged as the individual deed of each; and, like the wills, their language is wholly devoid of any suggestion that they were executed in pursuance of any such contract as is here relied upon. As deeds they, of course, never became, nor were either of them ever intended to become, effective while both their makers lived. Indeed, it was not intended that the deeds of the survivor should ever become effective under any circumstances. Each deed rested for its ultimate effectiveness upon a contingency which might never occur. As was said by this court in *Nichols v. Oppermann*, 6 Wash. 618, 34 Pac. 162:

"A deposit of a deed with a third person to be delivered to the grantee upon the happening of some future *certain* event has been held sufficient to constitute the deed an escrow, and control of it in such a case has passed out of the grantor's hands. But where the happening of the event is uncertain or where the grantor retains or reserves control over the instrument, it is not an escrow. Nor is such an undelivered deed evidence of a valid contract to convey, for it is essential that the writing required by the statute be delivered. Where there

exists a previous valid contract to convey, the conditions upon which the deed is deposited may rest in and be proved by parol."

This was said relative to a deed as such, both in form and substance. These were, however, deeds only in form, being in substance testamentary documents, and as such revocable like any other testamentary disposition of property. The testamentary nature of such deeds is well stated by Justice Cole of the supreme court of Iowa in *Burlington University v. Barrett*, 22 Iowa 60, 92 Am. Dec. 376, where, speaking for the court, he said:

"If the instrument passes a *present interest*, although the right to its possession and enjoyment may not accrue till some future time, it is a *deed* or contract; but if the instrument does not *pass an interest* or right till the *death of the maker*, it is a *will*, or testamentary paper."

Of course, no present interest passed by the signing and acknowledging of these testamentary deeds. Such an intention on the part of appellant and the deceased is inconceivable in view of the fact that it was intended that the deed of at least one of the parties should never become effective. Manifestly, a deed resting for its ultimate effectiveness upon a contingency which may never happen, cannot be said to convey a present interest. *Sappingfield v. King*, 49 Ore. 102, 89 Pac. 142, 90 Pac. 150, 8 L. R. A. (N. S.) 1066; *Schuffert v. Grote*, 88 Mich. 650, 50 N. W. 657, 26 Am. St. 316; *Emmons v. Harding*, 162 Ind. 154, 70 N. E. 142; *Pinkham v. Pinkham*, 55 Neb. 729, 76 N. W. 411. If we view these instruments as conveyances undelivered, we would then be met with the general rule as stated in 20 Cyc. 257, that,

"An undelivered deed made in pursuance of an oral contract for the sale of land will not, by the weight of authority, constitute an adequate memorandum of the contract; and the same is true of a deed delivered in escrow."

See, also, *Cagger v. Lansing*, 43 N. Y. 550; *Kopp v. Reiter*, 146 Ill. 437, 34 N. E. 942, 37 Am. St. 156, 22 L. R. A. 273.

We are of the opinion that these deeds were purely testamentary documents, and were revoked by both testators by the making of the wills of July 3, 1909, and like those wills, furnish no evidence upon their face of having been executed in pursuance of a contract such as appellant relies upon.

Some contention is made by counsel for appellant rested upon the theory of part performance on her part of the contract she relies upon. The record furnishes no evidence whatever of part performance, unless we regard the mere execution of the wills by both testators as performance. We do not think that the mere making of a will in pursuance of a contract required to be evidenced in writing by the statute of frauds, constitutes a part performance of such a contract so as to render the same enforceable. In *Gould v. Mansfield,* 103 Mass. 408, 4 Am. Rep. 573, answering a similar contention, the court said:

"There has been no part performance which amounts to anything. The plaintiff says she made a will devising her property to Nancy. But such an instrument was ambulatory, and might have been revoked by various acts, or by implication of law from subsequent changes in the condition or circumstances of the testator. Gen. Sts. c. 92, § 11. The plaintiff's property is still, as it has always been, in her own hands, and subject to her own control."

The decision of this court in *Swash v. Sharpstein,* 14 Wash. 426, 44 Pac. 862, 32 L. R. A. 796, is in harmony with this view. We conclude that there has been no such part performance as to enable us to recognize the contract under which appellant claims.

Among other authorities cited and relied upon by counsel for appellant, and perhaps most strongly supporting their contentions, are *Frazier v. Patterson,* 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, and *Brown v. Webster,* 90 Neb. 591, 134 N. W. 185, 37 L. R. A. (N. S.) 1196. In the Illinois case, the wills were executed by a husband and wife jointly as one document, which contained the declaration that they "do

make, publish, and declare this and none other to be our and each of our last will and testament." It devised a life estate in land by each to the other, specifically describing it, and providing upon the death of the survivor the land should go to their daughter. This will was held to evidence a contract of mutuality, rendering the same irrevocable. It does not seem to be wholly in harmony with some of the decisions we have reviewed, but in view of the fact that in the case before us the wills were separate writings, disposed of property of each testator to the other absolutely, and the revocation occurred before the death of either, our decision here should not be controlled by the Illinois case. The Nebraska case may possibly be differentiated from this by reason of the peculiarity of the statute of frauds of that state. However, we do not regard that decision as controlling here, in view of the observations we have made. Our attention is called to *Prince v. Prince,* 64 Wash. 552, 117 Pac. 255. The necessity of the contract being in writing was not considered in that case in any aspect.

Finally, the problem here presented, in its last analysis, is the question of the lawful manner of evidencing a contract of the nature here relied upon by appellant, in the light of the statute of frauds. While such a contract may be evidenced by language found in the particular will involved as well as in some other writing, we must remember that it is *the contract as such* with which we are here concerned. It is the written evidence of such a contract we are looking for, and it will be of some aid to the solution of the problem to, for the moment, put aside consideration of the writings as wills. The controlling thought in such a case is well stated in 1 Underhill on Wills, at § 13, as follows:

"Mutual wills, whether joint or several, are revocable by either testator during the life-time of the others so far as his disposition of property is concerned, without notice to or consent of the others, unless the making of the will is the result of a contract by which each has agreed to devise his property to the others."

We are unable to find in this record any evidence in writing of the existence of a contract between appellant and the deceased in pursuance of which the wills of July 3, 1909, were made by them, and we are not permitted by law to look to parol proof of the existence of such a contract, any more than we are permitted to look to parol proof of the conveyance of land. It follows that each of those wills was revocable at the pleasure of its maker, without notice to the other, and that the one executed by Peter Edwall was effectively revoked by his will of July 9, 1910. This is the will which must now guide the devolution of his estate.

The judgment is affirmed.

CROW, C. J., GOSE, and MOUNT, JJ., concur.

CHADWICK, J., concurs in the result.