**Frank K. MEYER, Individually, etc., et al., Petitioners,**

**v.**

**TEXAS NATIONAL BANK OF COMMERCE OF HOUSTON, Administrator, Respondent.**

**No. B–268.**

Supreme Court of Texas.

Feb. 14, 1968.

Rehearing Denied March 13, 1968.

Hirsch & Westheimer, Charles F. Cockrell, Jr., Andrews, Kurth, Campbell & Jones, Palmer Bradley, Hall E. Timanus and Brian E. O'Neill, Houston, for petitioners.

Brown, Kronzer, Abraham, Watkins & Steely, W. James Kronzer, W. J. Knight, Gail Whitcomb, Fred Parks, Bohn Phillips, Houston, for respondent.

NORVELL, Justice.

The trial court on motion for summary judgment held that the wills of Joseph F. Meyer, Jr. and his wife, Alpha Genevieve Meyer, were mutual wills based upon an oral contract. Both sides had filed motions for summary judgment. The motion of the executors of the Joseph F. Meyer, Jr., estate, Frank K. Meyer and the guardian and guardian ad litem of the estate of George B. Meyer, non compos mentis, was overruled. The motion of Texas National Bank of Commerce of Houston, administrator of the estate of Alpha Genevieve Meyer, was granted and judgment rendered against the Joseph F. Meyer, Jr. estate, Frank Meyer and George B. Meyer, impressing a trust upon an undivided two-thirds interest of the estate of Joseph F. Meyer, Jr. in favor of the heirs at law of Alpha Genevieve Meyer. The Court of Civil Appeals affirmed. 412 S.W.2d 957.

Being of the tentative opinion that a recovery upon the oral agreement was precluded by the statute of frauds, Article 3995, subd. 4,[1] we granted writ of error. After full argument and upon plenary examination of the record, our tentative opinion has been confirmed. Accordingly, the judgments of the courts below are reversed and judgment here rendered sustaining the motion for summary judgment filed by petitioners and overruling the motion of respondent and decreeing that respondent take nothing of petitioners. Rule 505, Texas Rules of Civil Procedure. We base our decision upon the statute of frauds and hold as a matter of law that the summary judgment proofs do not disclose circumstances such as would in equity avoid the bar of the statute.

The facts pertinent to our decision may be briefly stated as follows:

Joseph F. Meyer, Jr. and Alpha Genevieve Meyer were husband and wife, having married on January 10, 1909. They had no natural born or adopted children. On January 10, 1944, Alpha Genevieve Meyer executed a holographic will in which she appointed her husband independent executor of her estate and provided that after all just debts had been paid, her "entire estate of every kind and character, real, personal and mixed and wheresoever situated," should go to her husband in fee simple. The will contained no provision for the vesting of the property in the event Joseph F. Meyer, Jr. should predecease his wife.

Some six months later, on July 21, 1944, Joseph F. Meyer, Jr. executed a will before two attesting witnesses in which he designated his wife to serve as independent executrix of his estate and stated that it was his will that "all of the property, both real, personal and mixed, that I may die seized and possessed of, after payment of my just debts, together with all expenses incident to the probating of this will, shall pass to and vest in fee simple in my beloved wife Alpha G. Meyer, * * *." This will like that of Alpha Meyer contained no provision relating to the testator's property in the event his wife should predecease him.

In neither of the 1944 wills executed by Mr. and Mrs. Meyer was there a written provision or statement to the effect that said wills had been executed in pursuance of an agreement between them. The estates of both consisted primarily of real property, and there is no contention here that Article 3995, subd. 4, is not applicable.

---

1. All article references are to Vernon's Ann.Tex.Civ.Stats. Article 3995, subd. 4, reads as follows:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * *

"4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year; * * *."

Some eighteen years later, on March 13, 1962, Joseph F. Meyer, Jr. executed another will which revoked his 1944 will and provided that all his property, real, personal and mixed, should pass to his wife and to his brothers, George B. Meyer and Frank K. Meyer, in equal shares of one-third each. The three devisees in this will were designated as independent executors. On May 18, 1962, some two months after the execution of this later will, Joseph F. Meyer, Jr. died, and on July 3, 1962, the later will was admitted to probate. Shortly thereafter, Frank K. Meyer and George B. Meyer took their oaths as executors.

On June 15, 1962, Alpha Meyer died and Texas National Bank of Commerce of Houston is now serving as administrator of her estate.

Despite the circumstance that the 1944 wills of Mr. and Mrs. Meyer were executed upon different dates and neither will alluded to or mentioned a contractual arrangement as being extant between them, we shall assume for the purposes of this opinion that the wills were executed in pursuance of an oral agreement. This assumption, however, should not be construed as an indication that in our opinion the existence of a contract between Mr. and Mrs. Meyer was established as a matter of law and that there was no jury question involved in the determination of such issue. Although some discussion of the summary judgment proofs is entailed in stating the basis of our holding, it is unnecessary for us to pass upon the existence of a contract, vel non.

The controlling question in the case comes down to this: Is the present case distinguishable upon the facts from our recent holding in Kirk v. Beard? We hold that it is. From the report of that case, 162 Tex. 144, 345 S.W.2d 267 (1961), it appeared that two brothers, J. E. Sexton and W. H. Sexton, "orally agreed that they would make mutual and reciprocal wills.

[They] executed identical wills devising each to the other his undivided half interest in all lands owned by them in Johnson, Hill and Somervell Counties, together with all personal property situated thereon; and leaving to the nieces (plaintiffs in the case), share and share alike, the remainder of his property, both real and personal." W. H. Sexton died on September 30, 1952. His will was probated and his one-half interest in the lands passed to his brother in accordance with the terms of the will. Thereafter, J. E. Sexton attempted to make a different disposition of the property than that contained in the wills of November 23, 1948, and litigation resulted shortly after J. E. Sexton died.

In Kirk v. Beard, property passed from one of the contracting parties to the other, and it was held that it would be a fraud to permit the one who had received property from the other party to thereafter repudiate the contract. An intervention by equity was hence deemed supportable.

In the present case, no property passed from Alpha Genevieve Meyer to her husband under her will allegedly executed in pursuance of a contract. If we assume an oral agreement to execute mutual wills, does the making of a will in accordance with the agreement and keeping it potentially operative by not revoking it constitute such performance as will render the oral contract enforceable in equity notwithstanding the statute of frauds? To justify such intervention and the setting aside of a legally enacted statute, it is settled that there must be something more than a mere wrong or breach of contract. Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216 (1916); Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624 (1938).

The parties have not cited nor does our research disclose a case by this court which controls the present situation.[2] There is

2. It is argued that as this court in Kirk v. Beard, 162 Tex. 144, 345 S.W.2d 267 (1961), cited certain out of state cases which tend to support respondent's position, we are committed to the proposition that the execution of a mutual will

conflict among the cases decided in the American jurisdictions as to whether Mrs. Meyer's performance of the oral contract by making her will of January 10, 1944 (and not revoking it) would be sufficient to avoid the bar of the statute.

In Turnipseed v. Sirrine, 57 S.C. 559, 35 S.E. 757 (1900), it appears that Susan Turnipseed and her niece, Viola Neblett, entered into an oral agreement to make mutual wills, leaving the bulk of the property of the one to the other. Susan Turnipseed made a will in accordance with the agreement, but Viola Neblett made a different disposition of her property and then predeceased Susan Turnipseed who sued Viola Neblett's executor, George W. Sirrine, to enforce the oral agreement. She prevailed despite the statute of frauds upon the theory of partial performance.[3] Although no property had ever passed under the will of Susan Turnipseed to Viola Neblett, the court nevertheless reasoned that Mrs. Neblett had received a benefit by reason of Susan Turnipseed's execution of a will in accordance with the oral agreement. An analogy was drawn between the execution of a will and the procurement of a life insurance policy. The South Carolina court said:

"If the plaintiff (Susan Turnipseed) had died before Mrs. Neblett, she would have received at least as much as $10,000 from the plaintiff's estate. She therefore had the benefit of what might be termed the 'risk' from 1892 until 1897. If Mrs. Neblett had taken out a policy of insurance on her aunt's life for $10,000, it would have cost her a large sum of money, if any company would have taken such a risk, as she was then very old and infirm. Yet Mrs. Neblett received the benefit, during that time, of what was equivalent to a policy for that amount, or even more. It will not do to say that she received no benefit, as the plaintiff did not die, any more than it would lie in the mouth of a man who paid his premium of insurance with a note to say there was a failure of consideration, as he did not die, or his property was not burned. * * *"[4]

in accordance with an oral contract is a sufficient performance to remove the case from the bar of the statute of frauds. These cases were cited because it was believed that they, to a more or less degree, supported the holding made by the court in Kirk v. Beard and not to declare the law as to factual situations not then presently before the court. The bindingness of a prior decision under the rule of stare decisis cannot be determined apart from a consideration of the facts of the case, or perhaps stated more accurately, the facts which the deciding judges deemed important.

3. That part of the statute of frauds relating to the sale of lands was not involved in the case as Mrs. Neblett owned no real estate at the time of her death. The applicable section of the South Carolina statute of frauds provided:
   "No contract for the sale of any goods, wares, and merchandise for the price of fifty dollars or upwards shall be allowed to be good except the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or so that

some note or memorandum in writing of the said bargain be made and signed by the parties to be charged by such contract, or their agents thereunto lawfully authorized."
There is a possible and perhaps valid distinction pointed out by later decisions which may be drawn between the Turnipseed decision and cases apparently holding contrary thereto, such distinction being based upon a difference in the wording of the various sections of the statute of frauds as adopted by the several states. In Canada v. Ihmsen, 33 Wyo. 439, 240 P. 927, 43 A.L.R. 1010 (1925), the court in discussing the Turnipseed case said, "In the South Carolina case no real estate was involved, and it is not, accordingly, in point." See also, Hoff v. Armbruster, 125 Colo. 198, 242 P.2d 604 (1952), Wellington v. Apthorp, 145 Mass. 69, 13 N.E. 10 (1887), and Note, Joint or Mutual Wills, 61 Harv. L.Rev. 675, l. c. 680.

4. It does not appear that this rationale has been followed in subsequent cases making holdings similar to *Turnipseed*. It is mentioned in a case note appearing in 61 Harv.L.Rev. 675, l. c. 681.

In Brown v. Webster, 90 Neb. 591, 134 N.W. 185, 37 L.R.A., N.S., 1196 (1916), the Supreme Court of Nebraska, also upheld an oral agreement to make a will in a suit by a surviving widow against her deceased husband's estate. The force of this decision, however, is largely destroyed by the subsequent decision of the Nebraska court in Kimmel v. Roberts, 179 Neb. 8, 136 N.W.2d 208 (1965), in which it was said:

"Such a discussion of the evidentiary factors was outside the issue before the court (in Brown v. Webster) and constitutes pure dicta. Nevertheless, the obiter dictum contained in the opinion lacks the force of an adjudication. Notwithstanding this fact, the opinion is relied upon from time to time to sustain oral contracts embraced within the statute of frauds which are not in compliance with the law of this state as declared by the cases cited in disposing of the present litigation. As a clarification of the applicable rules relating to the enforcibility of oral contracts embraced within the statute of frauds, we disavow and reject the statements in the opinion which are in conflict with the rules announced in the present opinion."

The Austin Court of Civil Appeals, in Larrabee v. Porter, 166 S.W. 395 (1914, writ denied), referred to and discussed Brown v. Webster, but the situation in *Larrabee* was similar to that of Kirk v. Beard, 162 Tex. 144, 345 S.W.2d 267 (1961), in that the plaintiffs were seeking to enforce an oral agreement to make mutual wills entered into between Mr. and Mrs. G. W. Larrabee. Mutual wills were made, and Mrs. Larrabee died without revoking her will. Thereafter, Mr. Larrabee remarried and made a subsequent and conflicting will. The court said:

"We conclude that since the will was contractual as well as testamentary, under all the facts of this case that the

husband was estopped and precluded from disregarding the same, and therefore his attempted revocation was illegal and void." [5]

The Supreme Court of Washington, in Fischer v. Soames (In re Fischer's Estate), 196 Wash. 41, 81 P.2d 836 (1938), enforced a parol agreement to make mutual wills at the suit of the survivor against the estate of his deceased wife. The greater part of the opinion is taken up with a discussion of the sufficiency of the evidence to support a finding that an oral agreement to make mutual wills had been made. The discussion of the statute of frauds is extremely brief and contains no citation of supporting authorities. The court simply said:

"As to the effect of the statute of frauds, we need only state what has already been suggested by the remarks of the trial court; there was full and adequate performance of the contract by the respondent, sufficient to take it without the restrictions of the statute. Moreover, there was, initially, full and adequate performance by Mrs. Fischer herself, and she could not thereafter recede from the contract, even if she had desired to do so."

In re Fischer's Estate should be considered in the light of In re Edwall's Estate, 75 Wash. 391, 134 P. 1041 (1913), McClanahan v. McClanahan, 77 Wash. 138, 137 P. 479, Ann.Cas.1915A, 461 (1913), and Allen v. Dillard, 15 Wash.2d 35, 129 P.2d 813 (1942), as these cases clearly indicate that something more than the mere execution of a will in pursuance of an oral agreement is required to take the case out of the statute on the theory of total or partial performance.

We regard the case of Stump v. Harold, 125 W.Va. 254, 23 S.E.2d 656 (1942), as being clearly distinguishable from the situation now before us. In the Stump case,

---

5. See, footnote 2, supra. What was said there with reference to the citations in

Kirk v. Beard is likewise applicable to those appearing in Larrabee v. Porter.

property actually passed to Mrs. Stump through the medium of two deeds which along with mutual wills executed by Dr. and Mrs. Stump were part of a single transaction. Here again is a case presenting a situation closely analogous to that of Kirk v. Beard, supra, in that as a result of the arrangement, property passed to Mrs. Stump and hence she was bound by the contract she had made, and her destruction of the contractually supported will could not operate to destroy the rights of Dr. Stump under his agreement with her.

The majority of the American decisions seem to support a rule contrary to that stated in Turnipseed v. Sirrine and cases of similar import.

In Gould v. Mansfield, 103 Mass. 408, 4 Am.Rep. 573 (1869), the plaintiff sued to compel Nancy Gould's executors to deliver the testatrix's estate to the plaintiff on the theory that she and Nancy Gould had entered into an oral agreement under which each agreed to make a will leaving all her real and personal estate to the other. The plaintiff alleged both she and Nancy Gould had made such wills but thereafter Nancy changed her will and died leaving her property to others. The statute of frauds was set up as a defense and partial performance relied upon to defeat such defense. The Supreme Judicial Court of Massachusetts said:

"There has been no part performance which amounts to anything. The plaintiff says she made a will devising her property to Nancy. But such an instrument was ambulatory, and might have been revoked by various acts, or by implication of law from subsequent changes in the condition or circumstances of the testator. Gen.Sts., ch. 92, § 11. The plaintiff's property is still, as it has always been, in her own hands, and subject to her own control."

In Canada v. Ihmsen, 33 Wyo. 439, 240 P. 927, 43 A.L.R. 1010 (1952), the Supreme Court of Wyoming considered a similar situation to that present in Gould v. Mansfield. The plaintiff, Canada, sued Ihmsen, the administrator with will annexed of the estate of Mrs. Wiseman M. Hill, deceased, and Samuel W. Scott. He alleged that he and Mrs. Hill owned adjoining lots in Laramie, Wyoming, and entered into an oral agreement under which each agreed to make a will, leaving at death, the property so owned by them respectively to the other; that such wills were executed, and thereafter Mrs. Hill, without notice to him, revoked such will and devised her property to Samuel W. Scott. Canada sought enforcement of the oral contract. The trial court found that the oral agreement had been made but denied plaintiff's requested relief because of the statute of frauds. The Supreme Court affirmed. That court pointed out that there were some decisions holding that a contract such as that alleged by Canada could not be enforced except that the parties were related to each other, but did not base its decision upon this circumstance. The court among other holdings decided that the statute of frauds precluded a recovery for plaintiff. It was pointed out that most of the cases cited by plaintiff were cases "where one of the parties making a mutual will died, leaving his will in force and effect, and where the survivor who received the benefits under the will of the party deceased attempted to revoke his will to the detriment of third parties who were benefitted under both wills.", i. e. a Kirk v. Beard situation. The court placed considerable emphasis upon the circumstance that Canada survived Mrs. Hill and that the only performance claimed under the oral agreement was the execution of mutual wills. The court said:

"A similar situation is disclosed in the case of Gould v. Mansfield, supra [103 Mass. 408, 4 Am.Rep. 573,] in which the court said merely: 'There has been no part performance which amounts to anything.'

"A like situation, too, was disclosed in the case of Hale v. Hale, supra, [90 Va. 728, 19 S.E. 739] supra, and the court

said: 'The equitable doctrine of part performance is also invoked; but as to this, we may say, as was said in a similar case in Massachusetts, that "there has been no part performance which amounts to anything." ' "

The court then quoted from the opinions in In re Edwall, 75 Wash. 391, 134 P. 1041 (1913), and Gooding v. Brown, 35 Hun. 148 (N.Y.Sup.Ct.1885), as supporting its decision on the point. McClanahan v. McClanahan, 77 Wash. 138, 137 P. 479, Ann. Cas.1915A, 461 (1913), is also cited, and the apparently contrary cases of Brown v. Webster, 90 Neb. 591, 134 N.W. 185, 37 L.R.A., N.S. 1196 (1912), and Woods v. Dunn, 81 Or. 457, 159 P. 1158 (1916), are discussed.

The opinion in the Canada case contains a rather detailed consideration of the authorities on the point decided between 1869 (Gould v. Mansfield) and 1925, and we need not further dwell upon the cases discussed in that opinion.

In 1966, the Supreme Court of Wisconsin considered the case of In re Rogers' Estate (Chandler v. Estate of Harry A. Rogers), 30 Wis.2d 284, 140 N.W.2d 273. The facts in the case were stipulated. Annie Rogers died in 1961 and devised her one-half interest in two parcels of land to her husband, Harry A. Rogers. In 1962, Rogers and Bertha Chandler, the owner of the remaining one-half interest (his wife's sister), orally agreed that they would execute mutual wills each devising his or her interest in the lots to the other. Such wills were executed but no mention of an agreement was made therein. Rogers afterwards changed his will and left the property to a third person. Bertha Chandler sued on the oral agreement but recovery was denied by the trial court. In affirming on the ground that a sufficient perform-

ance to remove the bar of the statute of frauds, had not been shown the court said:

"An oral contract to devise real estate falls within the statute of frauds, sec. 240.08, Stats., and is void unless appellant's execution and nonrevocation of a will in accordance with the agreement constitutes sufficient part performance so as to remove the case from the purview of the statute. Although this is a question of first impression in Wisconsin, the all but unanimous rule in other jurisdictions is that the mere fact that the plaintiff has made a will which is not revoked at the time of the death of the other party does not amount to part performance. (See generally, 49 Am.Jur. Statute of Frauds, p. 820, sec. 522; 97 C.J.S. Wills § 1367f(3), p. 313; Sparks, Contracts to Make Wills, p. 47; Maloney v. Maloney (1935), 258 Ky. 567, 80 S.W. 2d 611; Busque v. Marcou (1952), 147 Me. 289, 86 A.2d 873, 30 A.L.R.2d 1411; Gould v. Mansfield (1869), 103 Mass. 408, 4 Am.Rep. 573; Rookstool v. Neaf (Mo.1964), 377 S.W.2d 402; First National Bank of Nevada v. Friednash (1956), 72 Nev. 237, 302 P.2d 281; In re Wheeler's Estate (1937), 164 Misc. 441, 299 N.Y.S. 945; Hagen v. Schluchter (N.D.1964), 126 N.W.2d 899; Hale v. Hale (1894), 90 Va. 728, 19 S.E. 739; In re Edwall's Estate (1913), 75 Wash. 391, 134 P. 1041; McClanahan v. McClanahan (1913), 77 Wash. 138, 137 P. 479; Canada v. Ihmsen (1925), 33 Wyo. 439, 240 P. 927, 43 A.L.R. 1010.)[6] As the Massachusetts Supreme Judicial Court said nearly 100 years ago: 'There has been no part performance which amounts to anything.' The theory underlying the part performance rule is that equity will not permit the statute, which was designed to prevent fraud, from being used as an instrument of fraud, and acts relied on as a part performance 'must be such as change the plaintiff's

6. These cases are cited in a footnote in accordance with the style employed by Mr. Justice Wilkie, the author of the opinion. The opinion also discusses Brown v. Webster, Woods v. Dunn and Turnipseed v. Sirrine.

position and would result in a fraud, injustice, or hardship upon him, if the contract were not executed or enforced.' Appellant in the present case has not changed her position in any way, acted to her detriment, suffered any loss or injury, been placed in a situation from which she could not retreat without prejudice to her rights existing at the time of the agreement, nor been defrauded by relying on the oral agreement. The most that has happened is that her expectations have been smashed. This is not 'part performance which amounts to anything' and elevates their agreement beyond the statute."

Respondent argues that Mr. Meyer's action in executing the 1962 will without notice caused his wife to suffer emotional distress when she gained knowledge of the revoking will upon the death of her husband. She had executed a will and codicil prior to 1944 in which she had left the bulk of her property to her relatives and had recited that she was not leaving anything to her husband's relatives as they had been well provided for by the estate of Joseph F. Meyer, Sr., her husband's father. It may be inferred that she wanted none of her property to go to her husband's brothers. After Mr. Meyer's death, Mrs. Meyer held some conversations with a lawyer but perhaps because of illness and emotional factors, she never managed to execute a new will. However, she evidently knew that if her husband predeceased her, she would have to execute a new will unless she wished the statute of descent and distribution to control as her 1944 will contained no bequest or devise over in case Mr. Meyer were not living at the time of her death.

The petitioners point out that the 1944 will was not changed until 1962 when both

Mr. and Mrs. Meyer were advanced in years; that a goodly portion of Mrs. Meyer's property had been given to her by her husband [7] and he may have deemed that one-third of his property would be ample for her continued support and that his brothers should have the remaining two-thirds.

However one may regard the merits of these "equity" arguments urged by the contending parties, the premises advanced do not supply a sound foundation upon which to base a conclusion or rule of law suitable for the devolution of property. Emotional consequences attendant upon the breach of a contract will obviously vary from person to person, depending upon numerous factors, such as natural disposition, condition of health and the like. Then there is the circumstance that the recollection of witnesses as to past conversations with deceased persons regarding testamentary intentions may be most unreliable. Generally, there is no way by which such testimony may be contradicted for as the usual thing such conversations do not take place in the presence of third persons, and hidden motives of witnesses are often difficult to bring to light. It is not asserted that those making affidavits in support of respondent's motion for summary judgment were prompted by improper motives, but this opinion is not being written alone for this particular case, and in discussing the action of some jurisdictions in providing that a contract to make a will must be in writing, an important evidentiary factor is mentioned in 1 Bowe-Parker: Page on Wills, § 10.10:

"Written evidence is more necessary in contracts of this sort than in the classes of contracts covered by the ordinary provisions of the statute of frauds. An unscrupulous claimant, who can secure

---

7. This argument has some bearing upon a suggested distinction between the present case and Brown v. Webster in which some emphasis is placed upon the fact that the capital base from which Brown operated to eventually secure considerable property was $20,000.00 inherited by Mrs. Brown from her mother, compared with some $1,000.00 worth of property owned by Mr. Brown at the time of the inception of the marriage relationship.

perjured evidence, can set up and prove an oral contract. The death of the promisor makes it impossible to contradict the testimony to the effect that he made such promise; and the fact that the transaction never happened makes it all the harder to disprove it if the guilty parties have been careful to make their story fit the possibilities of time and place. In spite of the fact that it also operates to the detriment of an ignorant or confiding promisee, legislation of this sort should be adopted generally." [8]

While Texas and many other states have not adopted a statute which proscribes all agreements to make wills which are not in writing, yet the tendency has not been to weaken or emasculate the statute of frauds by recognizing numerous exceptions relating to performance of an oral agreement. In this case, we have the making of a will and the non-revocation thereof by Mrs. Meyer and nothing more. This is generally considered insufficient and the performance exception restricted to the situations similar to that disclosed in Kirk v. Beard. For example, in Hagen v. Schluchter, 126 N.W. 2d 899 (N.D.1964), the court said:

"In this case it is also urged that an oral contract has been established and that the record shows sufficient performance to remove the oral contract from the operation of the statute of frauds. In the case of O'Connor v. Immele, 77 N.D. 346, 43 N.W.2d 649, we held that where the survivor of the makers of reciprocal wills, pursuant to an oral irrevocable contract, presents the will of the deceased maker for probate and accepts the benefits thereof, there is a sufficient performance of the oral contract to remove it from the operation of the statute of frauds.

"In the instant case, however, as has been heretofore pointed out, Adolph left no estate which could pass by his will. Elizabeth, upon Adolph's death, succeeded to his interest in all of the property held by them in joint tenancy by virtue of the instruments creating the joint tenancies. In effect Adolph's will became a nullity. It was not filed or offered for probate and Elizabeth received no benefits from it. There is therefore not a performance here which meets the standard set in O'Connor v. Immele, supra. It is contended, however, that a lesser performance is sufficient and that the execution of the wills alone will suffice.

"Corpus Juris Secundum states the rule as follows:

" 'An oral agreement for the making of mutual wills is not enforceable in equity where nothing more has been done or has occurred than the execution of wills, particularly where they do not refer to each other or to the agreement, since there is not such part performance as to take the agreement out of the statute of frauds.' 97 C.J.S. Wills § 1367, p. 313."

Similarly, in American Jurisprudence, it is said:

"In most of the cases which deal with mutual or reciprocal wills and hold that the statute of frauds has been satisfied, it appears that one of the parties to the

---

8. Mr. Justice McCown, concurring in Kimmel v. Roberts, 179 Neb. 8, 136 N.W.2d 208 (1965), said:

"It is strange indeed that we place so many technical requirements and formalities about the execution of a will and its amendment or revocation and yet, in certain circumstances, permit mere oral statements to be somehow wrapped in a contractual package which will supplant and override the will itself. * * *

"Insofar as the statute of frauds is concerned, it would seem preferable to adopt a rule that the execution of a will, and leaving it unrevoked until death, is not of itself sufficient to take an alleged irrevocable oral agreement for reciprocal wills between husband and wife out of the operation of the statute, unless the will on its face specifically refers to the oral contract."

contract dies, leaving his will in effect, and that the surviving party accepts the benefit under the will of the decedent." 49 Am.Jur. 820, Statute of Frauds, § 522.

Language practically identical with the above is found in Canada v. Ihmsen, 33 Wyo. 439, 240 P. 927, 43 A.L.R. 1010 (1925), followed by the citation of some thirteen decided cases including Larrabee v. Porter, 166 S.W. 395 (Tex.Civ.App.1914, writ denied), and Moore v. Moore, 198 S.W. 659 (Tex.Civ.App.1917, writ denied).

■ ■ The public policy of this state, as declared in the leading case of Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216 (1921), is in accord with the above and it was clearly stated that, "[T]o warrant equity's 'breaking through the statute' to enforce such a parol contract, the case must be such that the nonenforcement of the contract—or the enforcement of the statute—would, itself, plainly amount to a fraud." As heretofore pointed out and demonstrated by the Hooks v. Bridgewater opinion, the mere breach of a contract does not amount to the species of fraud which will justify the disregarding of the statute.[9] In this court's opinion, written by Chief Justice Phillips, it was said:

"Regardless of the disposition of other courts to engraft other exceptions upon a plain and salutary statute which had its origin in the prolific frauds and perjuries with which parol contracts concerning lands abounded, this court has always refused to further relax the stat-

ute. We think the wisdom of its course has been justified.

"Equity has no concern in such cases except to prevent the perpetration of a fraud. That is the only ground that can justify its interference. Otherwise, the exercise of its jurisdiction for the practical annullment of the statute would be but bare usurpation. It is not to remedy a possible loss to the purchaser that it may intervene. It is the operation of a plain and valid statute that is to be relieved against. For this reason eminent judges have doubted whether under any circumstances courts of equity had originally the power to enforce such parol agreements in open disregard of the statute, and have questioned the wisdom of departing from its certain rule however plausible the pretext. The statute is valid; it is imperative; it is emphatic. Its simple requirement that contracts for the transfer of lands be in writing, imposes no hardship. The effect of its relaxation in what seemed to the courts hard cases has produced abuses almost as great as would have its rigorous enforcement, in the substitution of a doubtful state of the law for a rule that was plain and certain and easily capable of observance. * * *."

For the reasons above stated, the judgments of the courts below are reversed and judgment here rendered granting petitioners' motion for summary judgment, Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (1958), and decreeing that respondent take nothing.

9. In Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, l. c. 628, this court said:
"A wrong was done Melton by Robertson's breach of the contract. This occurs whenever a contract coming under the statute is breached. Melton suffered a possible loss, in that he might have been able to sell his land during the two months in which he was relying upon Robertson to con-

summate the contract as modified. Such possibility of loss is present in every case of breach of a parol contract for the sale of real estate. The statute cannot be disregarded for the prevention of mere wrongs or to remedy possible losses. Hooks v. Bridgewater, 111 Tex. 122, 127, 128, 229 S.W. 1114, 15 A.L.R. 216."