Suzanne McELWEE and Hulan
Dwight McElwee,
Appellants,

v.

ESTATE OF Howard E. JOHAM,
et al., Appellees.

No. 10–98–045–CV.

Court of Appeals of Texas,
Waco.

Jan. 26, 2000.

Opinion Denying Rehearing
March 1, 2000.

Philip C. Banks, Roy D. Brantley, Waltman & Grisham, Bryan, for appellant.

D. Brooks Cofer, Jr., Cofer & Cofer, Bryan, Hugh W. Lindsay, College Station, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY.

## OPINION

TOM GRAY, Justice.

This was a dispute between a daughter and her father; now it is with his estate. He made a loan to her and her husband to purchase real property. The loan agreement was never reduced to writing. She now asserts the statute of frauds because repayment of the loan was not to be performed within one year, and the statute of limitations because it was more than four years after she stopped making payments on the loan before he sued her. Because the father had fully performed under the contract, the statute of frauds is not applicable. Because she resumed payments under an oral modification of the loan and did not cease making payments pursuant to the oral modification until shortly before her father sued her for payment, the statute of limitations is not applicable. Thus the judgment of the trial court awarding the father's executor judgment for the note balance and interest will be affirmed.

### THE HISTORY

In the early 1980's Howard E. Joham orally agreed to loan his daughter Suzanne and son-in-law, Tom Alan Garney, $41,000 to purchase real property. The loan was made, but the agreement was never reduced to writing. Payments were made on the loan by Suzanne and Tom until their divorce in 1991. Suzanne received the real property in the divorce. Suzanne was ordered to pay "the balance due, including principal and interest, on any indebtedness of the parties to Howard Joham." Neither the divorce decree nor the special warranty deed executed the same day as the divorce decree indicated that the property was pledged as security for the loan. Payments on the loan temporarily ceased at the time of the divorce.

Suzanne married Dwight McElwee. The monthly payment and the interest rate were orally modified and payments resumed in October 1993. Payments of the modified amount continued until February 1995. In March 1995, with the assistance of Tom, Howard filed a corrected special warranty deed to replace the one signed on the date of the divorce decree. It referenced the loan.

Suzanne and Dwight sued Tom and Howard to clear their title to the real property of the lien placed on it by the corrected special warranty deed. Howard counterclaimed for the balance on the loan and unpaid interest.

A judgment removed the lien and ordered the lis pendens cleared. It also awarded Howard judgment for the balance of the note and unpaid interest. The only complaints raised on appeal attack the judgment as to the award for the note balance and interest.

### COMPLAINTS ON APPEAL

Suzanne and Dwight raise two complaints on appeal. First, they complain that because Howard did not bring suit within four years of the first default on the loan agreement, that the four year statute of limitations had run before Howard sued, thus barring his ability to recover in this suit. Second, they complain that because the loan agreement by its terms could not be performed within one year that it was barred by the statute of frauds. We will address the issues in reverse order.

### STATUTE OF FRAUDS

The statute of frauds provides that if by the terms of an agreement it cannot

be performed within one year from the date of the agreement that it must be in writing and signed by the party against whom it is sought to be enforced. This rule is codified in the Business and Commerce Code as follows:

§ 26.01. Promise or Agreement Must Be in Writing

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to:

* * *

(6) an agreement which is not to be performed within one year from the date of making the agreement;

TEX. BUS. & COMM.CODE ANN. § 26.01 (Vernon 1987).

However, courts have crafted various exceptions to the application of the statute when enforcement would allow the very fraud that was sought to be prevented. One exception to the application is when one party has fully performed under the contract and the only thing remaining is performance by the other party. *Frey v. Pearson,* 168 S.W.2d 886, 889 (Tex.Civ. App.—Waco 1943, no writ). This exception has specifically been applied to an agreement to loan money requiring payments to be made over a period greater than one year. *Estate of Kaiser v. Gifford,* 692 S.W.2d 525 (Tex.App.—Houston [1stDist.] 1985, writ ref'd n.r.e.).

██ Having advanced the loan proceeds, Howard had fully performed his part of the contract. The only performance remaining was for Suzanne to repay the obligation. Thus the statute of frauds does not apply. Suzanne's second issue is overruled.

## STATUTE OF LIMITATIONS

██ The statute of limitation for an action on debt is four years. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3) (Vernon Supp.2000). When the contract calls for periodic payments, a cause of action for nonpayment accrues at the end of each period until the contract is complete. *Townewest Homeowners Ass'n, Inc. v. Warner Communication Inc.,* 826 S.W.2d 638, 640 (Tex.App.—Houston [14thDist.] 1992, no writ). Therefore, the limitations period begins to run as to each payment on the date it is due and not paid. *Id.* Loan payments initially ceased in 1991.

However, in this situation the effect of the modification of the loan agreement and the resumption of loan payments at a different amount than originally agreed must be considered. The agreement was modified. The amount of the monthly payments and the rate of interest was changed in 1993. Payments under the revised agreement were made until February of 1995. Suit was brought in March of 1997, well within the four year limitations period.

The effect of these actions was to create a new agreement, binding the parties to a new contract, from which this cause of action arose when the loan was defaulted upon in March 1995 and ultimately repudiated. The limitations period did not begin to run until that time and suit was brought within the limitations period of four years.

That this is the law cannot be disputed. In 1931, the Commission of Appeals summarized the applicable law as follows:

Where the parties to a promissory note, which is past due but is unbarred by limitation, and which by its terms bears interest until paid, mutually agree to an extension of the time of payment of the note to a future date, a new contract, based upon a new consideration deemed valuable in law, arises between the parties. By such an agreement, each of the parties becomes obligated to the other in respects not

comprehended by the contract arising from the note. The payee impliedly promises to surrender his present right to demand immediate payment of the indebtedness represented by the note, and to forego suit during the extension period; the payor impliedly promises to pay said indebtedness on the new maturity date, together with interest up to that date, in any event, at the rate provided in the note. Each of these new promises constitutes the consideration for the other, and a binding contract, embodying the terms of the note, as modified by the new agreement, results. *Benson v. Phipps,* 87 Tex. 578, 29 S.W. 1061, 47 Am. St. Rep. 128. In such a case, we understand the rule to be that, despite the fact that said agreement is oral, the existing right of action, which accrued to the creditor under the note, is relinquished, and that another right of action for the debt does not accrue to him until the new promise of the debtor to pay is breached. Limitation does not commence to run against an action to enforce the debtor's new promise to pay, until the time for performance of the new promise arrives. *Heisch v. Adams,* 81 Tex. 94, 16 S.W. 790; *Port Arthur Rice Mill Co. v. Beaumont Rice Mills,* 105 Tex. 514, 143 S.W. 926, 148 S.W. 283, 150 S.W. 884, 152 S.W. 629.

The foregoing legal principles are applicable to the present case. The words of the agreement of January, 1927, were that the "note" was to be "carried another year." This language clearly imports a purpose to extend the time of payment of the indebtedness evidenced by the note to January 1, 1928. From this extension agreement, constituting as it does a new contract binding the respective parties to new engagements, the cause of action declared on arose. This cause of action has never become barred by limitation; therefore Article 5539 of the statutes does not apply.

*McNeill v. Simpson,* 39 S.W.2d 835, 835–836 (Tex. Comm'n. App.1931, opinion aff'd). *See also Hoarel Sign Co. v. Dominion Equity Corp.,* 910 S.W.2d 140, 144–145 (Tex.App.—Amarillo 1995, writ denied).

Howard's claim for payment of the debt was not barred by the statute of limitations. Suzanne's first issue is overruled.

## CONCLUSION

Having overruled both issues raised on appeal by Suzanne and Dwight McElwee, the judgment in favor of James R. Joham, Independent Executor of the Estate of Howard E. Joham, is affirmed.

## OPINION DENYING MOTION FOR REHEARING

Hulan Dwight McElwee complains in a motion for rehearing that affirmance of the trial court's order creates a contractual obligation where none existed. This is the first time he has raised this issue on appeal. By failing to raise this issue prior to submission, McElwee waived presentation and consideration of the complaint by this Court. *Morrison v. Chan,* 699 S.W.2d 205, 206–207 (Tex.1985); *Langston v. Eagle Publishing Co.,* 719 S.W.2d 612, 625 (Tex. App.—Waco 1986, writ ref'd n.r.e.) (on motion for rehearing); *see also* Tex.R.App. P. 38.1(e). McElwee's motion for rehearing is denied.