No. 04-02-00117-CV



Deana A. PEÑA,


Appellant



v.



Bohn HILLIARD,


Appellee



From the 288th Judicial District Court, Bexar County, Texas


Trial Court No. 2000-CI-10892


Honorable Martha Tanner, Judge Presiding



Opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Alma L. López, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: October 9, 2002


AFFIRMED

 Deana A. Peña ("Peña") appeals a judgment rendered in favor of Bohn Hilliard ("Hilliard")
following a bench trial. Hilliard was awarded $96,341 in damages for loans Peña failed to repay.
Peña asserts seven points of error, raising the following issues: (1) the evidence is legally and factually
insufficient to support the trial court's finding of the existence of an agreement; (2) any oral
agreement between the parties was unenforceable under the statute of frauds; (3) the evidence is
legally and factually insufficient to support the amount of damages awarded by the trial court; and
(4) the trial court erred in admitting a promissory note into evidence. (1) We affirm the trial court's
judgment.

Background


 Peña and Hilliard carried on an extra-marital affair for approximately three years. During this
time, Peña received a substantial amount of money from Hilliard. The parties disagree as to whether
the money was loaned to Peña or given to her.

 Hilliard testified that he loaned money to Peña on numerous occasions to assist her in
establishing her insurance agency and that Peña agreed to repay him. The first two loans were
evidenced by written promissory notes. The second promissory note included the balance remaining
under the first promissory note. The second promissory note provided for 20% interest, no
repayment terms or maturity date. 

 The remainder of the loans were evidenced by a ledger kept by Hilliard as additional money
was loaned and by identical notations made on the second promissory note listing the dates and
amounts of those loans. In addition, Hilliard testified that he allowed Peña to use his credit cards and
that he obtained cash advances on credit cards which he also loaned to Peña. Hilliard testified that
Peña agreed to repay the credit card charges and advances monthly as payments became due. Finally,
Hilliard testified that he obtained two home equity loans, and the proceeds were deposited into a joint
account and were loaned to Peña for use in her business, with the exception of approximately $6,000,
which Peña returned to Hilliard for use in financing the wedding of Hilliard's son. Hilliard testified
that Peña agreed to make the monthly payments on the home equity loans. Although Peña made
payments on the home equity loan and the credit card bills for a period of time, Hilliard testified that
she quit paying at some point. 

 Peña testified that the only amount loaned to her was the amount reflected in the written
promissory notes. Peña testified that she repaid the promissory notes on June 5, 1998, by giving
Hilliard a check for $18,000. Hilliard testified that he never received the check from Peña and that
the endorsed signature on the back of the check was not his.

 At the end of the bench trial, the trial court rendered judgment that Hilliard recover $96,341
from Peña. Peña timely filed this appeal.

Existence of Contract


 In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light
most favorable to the finding, and we disregard all evidence and inferences to the contrary. Texas
Dept. of Mental Health and Mental Retardation v. Rodriguez, 63 S.W.3d 475, 480 (Tex. App.--San
Antonio 2001, pet. denied). If there is a scintilla of evidence to support the finding, the finding will
be upheld. Id. In reviewing a factual sufficiency point, we are required to weigh all of the evidence
in the record. Id. Findings may be overturned only if they are so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust. Id. The trier of fact is the sole
judge of the credibility of the witnesses and the weight to be given to their testimony. Id. Because
the appellate court is not the fact finder, it may not substitute its own judgment for that of the trier
of fact, even if a different answer could be reached on the evidence. Id.

 The existence of an oral contract may be proved by circumstantial as well as direct evidence.
Harris v. Balderas, 27 S.W.3d 71, 77 (Tex. App.--San Antonio 2000, pet. denied). We look to the
communications between the parties and to the acts and circumstances surrounding those
communications. Id. To form an enforceable contract, there must be an offer, an acceptance, and
a meeting of the minds, and the terms must be expressed with sufficient certainty so that there will
be no doubt as to what the parties intended. Id. Additionally, consideration is a fundamental element
of any valid contract. Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex. App.--San Antonio 1999,
pet. denied). Consideration is a present exchange bargained for in return for a promise. Id. at 606.
It can be either a benefit to the promisor or a detriment to the promisee. Id. It may consist of some
right, interest, profit, or benefit that accrues to one party, or, alternatively, of some forbearance, loss
or responsibility that is undertaken or incurred by the other party. Id. A promise for a promise is
sufficient consideration in Texas. Id. A contract that lacks consideration lacks mutuality of
obligation and is unenforceable. Id.

 In this case, Hilliard's testimony is evidence that the parties reached an agreement that Hilliard
would loan Peña money from various sources and that Peña would repay Hilliard either by re-paying
him or by making the monthly payments to the funding source, i.e., the bank for the home equity
loans or the credit card companies. Consideration was given because the debt incurred by Hilliard
in lending the money is a detriment to him as is his forbearance from using his money until Peña
repaid him, and the money loaned to Peña was a benefit to her. Although Peña testified that the
money was given to her as a gift, the trial court is the sole judge of Peña's credibility, and the trial
court was free to disbelieve Peña's testimony. The evidence is legally and factually sufficient to
support the existence of a contract.

 The next issue is whether the loan agreements are sufficiently certain and unambiguous to be
enforceable. In order to be legally binding, a contract must be sufficiently definite in its terms so that
a court can understand what the promisor undertook. T.O. Stanley Boot Co. v. Bank of El Paso, 847
S.W.2d 218, 221 (Tex. 1992). The material terms of the contract must be agreed upon before a court
can enforce the contract. Id. In a contract to loan money, the material terms will generally be: the
amount to be loaned, maturity date of the loan, the interest rate, and the repayment terms. Id.

 In this case, Hilliard's testimony, the exhibits listing the loans, and the promissory notes are
evidence of the amount loaned, and Hilliard testified that he loaned all the money not evidenced by
the promissory notes interest-free. With regard to the maturity date and the repayment terms, Hilliard
testified that Peña agreed to pay the credit card payments and the home equity loan monthly as they
became due. This is evidence of the maturity date and repayment terms for the money loaned in this
manner. However, there is no evidence regarding a maturity date or repayment terms for the cash
loaned by Hilliard from his personal savings or for the loan evidenced by the second promissory note.
Therefore, as to the amount of money loaned from Hilliard's personal savings and evidenced by the
second promissory note, the agreement is not sufficiently definite to be enforceable. Whether the lack
of certainty requires a reversal of the trial court's judgment depends on whether we are required to
conclude that the trial court included the amount loaned by Hilliard from his personal savings and the
loan evidenced by the second promissory note in calculating the damages awarded to him. We will
address this issue in our discussion of Peña's damages issue.



Statute of Frauds


 Peña next argues that the loan agreement is unenforceable under the statute of frauds.
However, one exception to the application of the statute of frauds is when one party has fully
performed under the contract and the only thing remaining is performance by the other party.
McElwee v. Estate of Joham, 15 S.W.3d 557, 559 (Tex. App.--Waco 2000, no pet.). This exception
has specifically been applied to an agreement to loan money requiring payments to be made over a
period greater than one year. Id.; Estate of Kaiser v. Gifford, 692 S.W.2d 525, 525-26 (Tex.
App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.). In this case, Hilliard had fully performed by
lending Peña the money; therefore, the statute of frauds does not apply.

 In her brief, Peña also relies on section 26.02 of the Statute of Frauds provision regarding loan
agreements in excess of $50,000. That section only applies to loan agreements involving financial
institutions. See Tex. Bus. & Com. Code Ann. § 26.02(2) (Vernon 2002) (defining loan agreement
as promise pursuant to which financial institution loans money). The statute of frauds, therefore, does
not render the loan agreement unenforceable.

Damages


 Peña contends that the evidence is insufficient to support the trial court's award of $96,341
in damages. It is well-established that a damage award will be upheld if it is within the range of
testimony regarding the amount of damages incurred. Vingcard A.S. v. Merrimac Hospitality
Systems, Inc., 59 S.W.3d 847, 865 (Tex. App.--Fort Worth 2001, pet. denied); Duggan v. Marshall,
7 S.W.3d 888, 893 (Tex. App.--Houston [1st Dist.] 1999, no pet.).

 Hilliard testified that he loaned Peña approximately $40,000 of the funds he received from the
first home equity loan. Hilliard also testified that he loaned Peña an additional $40,000-$50,000 of
the funds he received from the second home equity loan. A deposit slip was discussed in which Peña
deposited $40,815.92 into the joint account after the second home equity loan. An exhibit was
introduced showing that the balance due on the Citibank credit card was $10,867, the balance due
on the First USA credit card was $5,256.45, the balance due on the USAA credit card was $11,875,
and the balance due on the Bank of America credit card was $3,060.87. Hilliard testified that he had
personally charged approximately $2,000 on the credit cards. Peña testified that she believed that
approximately $10,000 in cash advances were received from the Citibank credit card. Peña testified
that she charged approximately $3,000 in car repairs on the Citibank credit card. Peña testified that
approximately $30,000 of the funds from the second home equity loan were deposited into a joint
account on which Peña and Hilliard had authority to write checks. Hilliard testified that he received
approximately $5,000-$6,000 of the funds received from the second home equity loan. Hilliard
testified that he received approximately $3,000 of the funds from the first home equity loan. At trial,
Hilliard testified that the current balances of the credit cards were approximately: $13,000 on First
USA; $4,840.35 on Frost; $10,126.75 on Citibank; and $88,000 on the home equity loan. Peña
testified that she paid Hilliard $18,000, but Hilliard denies receiving the payment and testified that the
endorsed signature on the check was not his. In addition, Hilliard's attorney was permitted to testify
as follows:

 As of February 14, 2001, there was a balance due [on the home equity loan]
of $83,583, and this includes payments that were - excuse me. In addition to this
amount of money there were payments that my client made that totaled $20,328.
Now some of these payments were included in the 48,000. So approximately 8,000
were included in that.

 So if you go down to the very bottom figure of 55,799, the figure above that
is 12,741, which is the payments that were made in addition to the payments that are
included in the 48,000. So instead of giving him credit for the 20,000, we give him
credit for the 12,000.

 There are credit cards that were - that have a balance of $11,875, 10,867,
5,236, and 3,060. For a total of $31,058.

 He said that he used, at the most, $2,000 on those credit cards. We have not
given him credit for that - excuse me, given her credit for that. So, actually, instead
of 155 it should be - if we give him credit for $1,799, that would mean the balance
due and owing would be $154,000.

 We've given credit over in the bottom right-hand corner for payments that he
received. He received the $18,000 check that she gave to him out of the payment that
he gave to her through the mortgage company.

 He also said that she returned to him $6,000 - he said 3 to $6,000 for his
son's wedding. So we gave her credit for $24,000.

 And that's where we are.


See Banda v. Garcia, 955 S.W.2d 270, 272 (Tex. 1997) (attorney's statements may be considered
as evidence if no objection is made to absence of oath).

 In view of the range of testimony regarding damages, the evidence is sufficient to support the
trial court's damage award even if we exclude the cash loaned from Hilliard's personal savings and
the loan evidenced by the second promissory note. From our record, we cannot conclude that the
trial court included the amounts of those loans in calculating the amount of the damages awarded.
Clearly, the trial court did not award the full amount requested; therefore, the trial court must have
excluded certain loans in determining the amount of damages to be awarded. Because the damage
award is within the range of testimony regarding the amount of damages incurred, the evidence is
sufficient to support the damage award.

Admission of Exhibit


 Peña complains that the trial court erred in admitting Plaintiff's Exhibit 1, the second
promissory note, because it contained Hilliard's hand-written notations regarding the dates on which
additional amounts were loaned to Peña. Peña objected to the admission of the exhibit based on the
parol evidence rule and the best evidence rule. In its brief, Peña contends that the exhibit should not
have been admitted because it had Hilliard's handwriting "all over it" that was added after the
promissory note was signed. Peña concludes, "It is well established law that supplemental writing
on a contract after the contract is executed is inadmissible at the time of trial."

 First, Peña cites no authority to support her assertion regarding the "well established law;"
therefore, she likely waived this issue. See Trenholm, 646 S.W.2d at 934; Kosowska, 929 S.W.2d
at 508-09.

 If we consider the objections made at trial, we review the trial court's ruling under an abuse
of discretion standard. State v. Bristol Hotel Asset Co., 65 S.W.3d 638, 647 (Tex. 2001). The "best
evidence rule" provides that "[t]o prove the content of a writing, recording, or photograph, the
original writing, recording, or photograph is required except as otherwise provided in these rules or
by law." Tex. R. Evid. 1002. Peña does not contend in her brief that the promissory note was not
the original. The parol evidence rule precludes consideration of extrinsic evidence to contradict, vary
or add to the terms of an unambiguous written agreement. Bank of America v. Haag, 37 S.W.3d 55,
57 (Tex. App.--San Antonio 2000, no pet.). The handwriting on the promissory note was not
intended to add to the terms of that note because under the note 20% interest was being charged, and
Hilliard testified that he loaned the additional amounts interest-free. Furthermore, even if the trial
court erred in admitting the promissory note, any error would be harmless. Peña testified that she
signed the second promissory note and was indebted to Hilliard for the amount evidenced by the note;
Peña just claimed that she had repaid the note with the $18,000 check. In addition, the ledger
showing the dates on which Hilliard made loans from his personal savings totaling $48,000 contains
the same information that was written on the promissory note.



Conclusion


 The trial court's judgment is affirmed.


 PHIL HARDBERGER, 

 CHIEF JUSTICE


DO NOT PUBLISH


1. Peña also asserts a point of error contending that the trial court erred in denying her motion for new trial.
Peña's brief does not contain any separate argument or authorities to support this point of error; therefore, this issue
has not been properly presented for appellate review and is waived. Trenholm v. Ratcliff, 646 S.W.2d 927, 934 (Tex.
1983); Kosowska v. Khan, 929 S.W.2d 505, 508-09 (Tex. App.--San Antonio 1996, writ denied).